William C. Brown *et al.*

*v.*

John A. McKay *et al.*

*Filed at Ottawa, June 19, 1894.*

151 315
· 59a 423

151 315
197 ⁸290
101a ²206

151 315
201 ⁴446

151 315
e105a³673

1. Foreclosure—*proof of execution of notes.* Where there is no denial of the execution of the notes secured by mortgage, in a bill to foreclose, the production of the notes on the hearing is sufficient evidence of their execution.

2. Trust Deed—*application by cestui que trust to file bill to foreclose.* Where a deed of trust provides, that on default of payment the legal holder of the notes secured may apply to the trustee to file a bill to foreclose, the fact that the *cestui que trust* joins with the trustee in a bill to foreclose, is evidence of his application to the trustee to file the bill.

3. Same—*right to declare whole debt due without notice.* Where a trust deed provides, that if default be made in the payment of the notes, or either, or any part of them, the whole of the notes shall, at the option of the legal holder of them, become immediately due and payable, but makes no provision for notice of the exercise of such option, neither the mortgagor, nor those claiming under him, can be permitted to insist upon notice of the exercise of the option as a condition precedent to the right of the mortgagee to file a bill to foreclose for the whole debt.

4. Where no formula or particular form of expression is made necessary to declare the maturity of the whole indebtedness, the formation of an intention in the mind of the person who has the option to declare the entire debt due, accompanied by any affirmative act or declaration evincing such determination, will be sufficient. The preparation of a bill to foreclose, and authorizing the same to be filed, is sufficient evidence of the intention to exercise the option.

5. The extension of the time of payment of the first of a series of notes secured by deed of trust, until another note and the interest on other notes mature, will not, after the expiration of such extension, deprive the legal holder of the notes of the right of declaring the whole indebtedness due and foreclosing the deed of trust.

6. MORTGAGE—*rights of purchaser of undivided part of equity of redemption.* It is well settled in this State, that a purchaser of part of mortgaged premises can not redeem the part purchased by him by paying a proportion of the mortgage debt. The mortgagee is entitled to retain his lien upon every part of the mortgaged premises until the whole of the mortgage debt is paid. He will not be compelled, in equity, to release a portion of the premises upon payment of a proportionate part of the incumbrance upon the whole.

7. SAME—*foreclosure as against purchaser of part of the equity of redemption.* A court of equity, in the absence of equities arising between the purchaser of the equity of redemption and the mortgagee, before attempting an apportionment, or requiring the sale in undivided interests, will require it to be shown that the mortgagee will not be prejudiced thereby.

8. SAME—*sale on foreclosure in the inverse order of alienation of the equity of redemption.* On bill to foreclose a mortgage, it appeared that the mortgagor sold his equity of redemption to A., who assumed the payment of the mortgage debt; and that A. sold an undivided one-fifth of the equity of redemption to B., who assumed to pay one-fifth of the mortgage debt. The court, by its decree, ordered sale of the entire premises, refusing to so apportion the indebtedness upon the land that B. could redeem a part of the premises by paying a *pro rata* share of the incumbrance, or to require the four-fifths interest of A. to be first sold. It was not alleged by the pleadings that the undivided four-fifths, if sold separately, would bring enough to satisfy the four-fifths of the indebtedness and costs remaining after the payment of one-fifth by B., or that it would bring as much proportionately when thus sold as it would if the land was sold together: *Held,* that there was no error in the decree.

9. In such case it was insisted, that the court should have marshalled the securities, and subjected the portion of the land retained by A. to the payment of the mortgage debt before applying to the undivided interest of B. therein, but it was *held,* that the insistence could not be sustained, for the further reason that no equities existed in favor of the latter, that the entire debt should be paid by A., or that his interest in the land should constitute a fund for the extinguishment of the lien upon the interest held by B.

10. The rule requiring the sale of land in the inverse order of alienation, and treating the portion of land retained by the mortgagor as the primary fund out of which to satisfy the mortgage debt, rests upon the reason that the mortgagor sells a part of the mortgaged premises relieved of the incumbrance, and retains a part himself; that, as between the mortgagor and such grantee, the part held by the mortgagor, in equity and good conscience, should be first subjected to the payment of the mortgage debt. The same principle will apply as between a pur-

·chaser of the equity of redemption, subject to the mortgage, as A. pur-
·chased, and a purchaser from him.

11. The right to compel resort to the interest of the mortgagor pre-
supposes that the debt has remained his, and that he is primarily
liable for its payment. Hence, when he has paid it, either voluntarily,
or his interest in the land has been thus applied, he will be entitled to
no contribution from the portion of the land he has aliened.

WRIT OF ERROR to the Appellate Court for the First
District;—heard in that court on writ of error to the Su-
perior Court of Cook County; the Hon. PHILIP STEIN,
Judge, presiding.

This was a bill in the Superior Court of Cook county,
brought July 30, 1892, by appellees, to foreclose a trust
·deed on twenty-five acres of land, specifically described, in
Sec. 6, T. 39 N., R. 13 E., in said county, executed by
appellant Brown to Alexander McKay, trustee, to secure
the payment of three certain promissory notes of $6,666.66,
each, dated December 4, 1890, and payable in one, two and
three years, respectively, to the order of said John A. Mc-
Kay, with interest at six per cent per annum, payable semi-
annually, and evidenced by coupons attached to said notes.
The mortgagor conveyed the premises to one Reynolds,
subject to the mortgage, which the latter agreed to pay,
who, in turn, sold an undivided one-fifth thereof to one
Hans P. Johnson, the conveyance to Johnson being in trust
for himself and others, naming them, and all these persons
were made parties defendant to the bill.

The *cestui que trust* joined with the trustee as complainant
in the bill. The trust deed provided, that if default should
be made in the payment of said notes, or any part thereof,
or of the interest thereon, or any part thereof, at the time
and in the manner specified, then the whole of said principal
sum and interest secured by said three notes should, at the
option of the legal holder thereof, become immediately due
and payable; and, on the application of the legal holder of
said notes, the grantee might file a bill, etc., for foreclosure

and sale of the whole, or any part of said premises, and out of the proceeds of such sale, to pay the costs of suit, including reasonable fees and commissions to the executor of the trust, and $500 attorney's and solicitor's fees, and the principal and interest of said notes.

The bill alleged, and it appeared, that at the time of filing the bill, $2,266.66 of the note first falling due, and a large amount of interest upon all of said notes was due and unpaid; and, it is alleged, that for the default in payment of balance of said first note, and interest on said balance, and the semi-annual interest on the other two notes, etc., said John A. McKay has elected to and has declared the whole principal sum of the three notes, and interest thereon, due and payable. It is then alleged, that the sum of $500 is due for attorney's fees, under the conditions of said mortgage. Prayer of the bill is for a receiver, that a guardian *ad litem* be appointed for minor defendants, for an accounting, and that the defendants, or such of them as may be liable, be adjudged to pay whatever sum is found due, with solicitor's fees and costs, etc., that the mortgage be foreclosed, and in default of payment, sale be made, etc.

Joint and several answer of the defendants, Hans P. Johnson and others, was filed, setting up payment of $1,570 on account of said indebtedness, by reason of his purchase of one-fifth interest in the premises, and his readiness, etc., to pay the balance of his share thereof, upon release of said one-fifth interest, from said mortgage lien; etc. And also a cross-bill, setting up said payment of $1,570, alleging readiness, etc., to pay the residue of his share of the debt, and praying that the premises be divided, or that said incumbrance be apportioned, and upon payment by said Johnson of his share, that his interest in the premises be released, etc. To the cross-bill a demurrer was filed and sustained.

The report of the master, to whom the case was referred to take proofs, was filed February 1, 1892, and on Febru-

BROWN *et al. v.* McKAY *et al.*          319

Statement of the Case.   Brief for the Plaintiffs in Error.

ary 7, 1893, said Johnson filed an amended answer, deny-
ing that prior to the filing of the bill complainant had elected
to declare or had declared the whole amount of said in-
debtedness due, but that, at the maturity of the note and
interest coupons, the time of payment was extended by
McKay, and that the time had not expired at the filing of
the bill.

A guardian *ad litem* was appointed for the minor defend-
ants, who answered, and upon replications being filed, the
case was referred to a master, who found that default had
been made in the payment of principal and interest, as al-
leged in the bill; that, in consequence thereof, the holder
of the notes and trust deed had elected to declare and had
declared the whole amounts of the notes and interest due and
payable, and the same thereby became due and payable; that
the amount due was $18,846.18, and finding complainants en-
titled to recover $500 as solicitor's fees; that said sum was
reasonable for the services rendered and to be rendered
in said cause, and that the prayer of the bill should be
granted, etc.; and reported the evidence taken before him.
Exceptions were filed to the master's report, and by him
overruled.

Upon the incoming of the master's report, the cause was
heard, exceptions to the report overruled, and decree en-
tered foreclosing the trust deed, in all respects as recom-
mended by the master, and ordering, that in default of
payment within a day fixed by the court, sale of the prem-
ises be made at public vendue, after notice, etc., and upon
failure to redeem, barring equity of redemption, etc., in the
usual form.

Mr. F. W. BECKER, for the plaintiffs in error:

The complainant was bound to do some act or make some
declaration showing an intention to hold the whole debt as
due.   *Gradle* v. *Warner*, 140 Ill. 123; *Follansbee* v. *S. A.
M. Co.*, 5 Brad. 17.

There was an extension of the time of payment sixty ·days from June 4, 1892; that is, until August 4, 1892, yet the bill was filed July 30, 1892. It was prematurely filed. *Clevinger* v. *Ross*, 109 Ill. 349; *Windett* v. *Conn. M. L. I. Co.*, 130 id. 621; *Daniels* v. *Osborn*, 71 id. 169; *Hamlin* v. *Race*, 78 id. 422; *McCoy* v. *Babcock*, 1 Ill. App. 414; *Kahn* v. *Cook*, 22 id. 559; *Potomac M. Co.* v. *Evans*, 84 Va. 717.

· This extension was a waiver of the right to accelerate the time of the maturity of the notes (*Thayer* v. *W. S. M. Co.*, 105 Ill. 540), the provision in the trust deed relative to acceleration being a mere privilege to the creditor which he might waive. *Brokaw* v. *Field*, 33 Ill. App. 140.

The principal and interest notes due December 1, 1891, having been extended until June 4, 1892, and for sixty ·days thereafter, the defendants were thrown off their guard, and induced to believe that forfeiture would not be insisted on; and before complainant could equitably pro-·ceed either to exercise the right to declare or to enforce the forfeiture, defendants should have received notice. *Palmer* v. *Ford*, 70 Ill. 369; *Home Life Ins. Co.* v. *Pierce*, 75 id. 426; *Clevinger* v. *Ross*, 109 id. 349; *Rounsavell* v. *Crofoot*, 4 Brad. 671.

The decree should have provided either for an apportionment of the debt, or a sale in the inverse order of alienation. *Meacham* v. *Steele*, 93 Ill. 135.

Brown, the mortgagor, having become the owner of four-fifths of the premises prior to the filing of the bill, his portion should have first been applied to the payment of the indebtedness. *Lock* v. *Fulford*, 52 Ill. 166; *Iglehart* v. *Crane*, 42 id. 261; *Alexander* v. *Welch*, 10 Brad. 181.

Proof of an allegation of an incumbrance in partition was held necessary in *Wilhite* v. *Pearce*, 47 Ill. 414.

Proof of election to declare a forfeiture was thought essential in *Heald* v. *Wright*, 75 Ill. 17; *Moore* v. *Smith*,

24 id. 512; *Gradle* v. *Warner*, 140 id. 123. Does an election to accelerate payment stand on a different footing?

By the terms of the trust deed, an application to the trustee by the *cestui que trust* was made a condition precedent to filing a bill, and proof of the performance of such a condition precedent was held necessary in *Eq. T. Co.* v. *Fisher*, 106 Ill. 189.

A mortgage on an undivided interest in land may be foreclosed and the interest sold. Wiltsie on Mort. Foreclosure, sec. 261; *Sutlive* v. *Jones*, 61 Ga. 676; *Baker* v. *Shephard*, 30 id. 706; *Sandford* v. *Bulkley*, 30 Conn. 344; *Southworth* v. *Parker et al.*, 41 Mich. 198.

Why, then, should not the rule of inverse order apply in such case? It was recognized as applicable in such case in *Shrack* v. *Shriner*, 100 Pa. St. 451, and *Southworth* v. *Parker*, 41 Mich. 198.

Messrs. TATHAM & WEBSTER, for the defendants in error:

The filing of the bill by the *cestui que trust* and trustee jointly, was sufficient evidence of the authority of the trustee to act. But the *cestui que trust* might have filed the bill in his own name, without the consent of the trustee, and without joining him as co-complainant, and that would have been a compliance with the provisions of the trust deed. It can make no difference to the mortgagor who files the bill. *Cheltenham Imp. Co.* v. *Whitehead*, 128 Ill. 279.

The filing of the bill itself shows sufficiently an election to declare the whole sum due. 8 Eng. and Am. Enc. of Law, 193.

The bill avers that the *cestui que trust* has elected to declare and has declared the whole of the principal sum of the three notes, and the interest thereon, due and payable. This amounted to an exercise of the option given by the trust deed.

No particular form of expression is necessary to declare the option to consider the entire debt due, and where. nothing is said in the mortgage about declaring an option, no declaration of forfeiture is necessary, but proceedings. to foreclose may be commenced at once. *Harper* v. *Ely*, 56 Ill. 179.

Nor is any notice to the debtor necessary, of the exercise of such option, where the instrument itself does not require it. If the maker of the deed of trust had wished personal notice of such election, he should have so provided by his deed. *Princeton L. & T. Co.* v. *Munson*, 60 Ill. 371; *Hoodless* v. *Reid*, 112 id. 105; *Magnusson* v. *Williams*, 111 id. 450.

A mortgagee who holds a mortgage upon the entire interest in a lot of land can not be called upon to allow a sale of an undivided interest. 2 Jones on Mortgages, sec. 1617.

When one purchases a part of mortgaged premises he can not redeem that part purchased by him by paying a just proportion of the mortgage debt. The mortgagee is entitled to retain his lien upon every part of the mortgaged estate until the whole of the mortgage debt is paid; *Meacham* v. *Steele*, 93 Ill. 135.

A person can not redeem an undivided share of land by paying his proportional share of the debt, and a part owner must redeem the whole. *Durley* v. *Davis*, 69 Ill. 133. A purchaser of a part of mortgaged land can not redeem that part by paying his proportion of the debt. *Meacham* v. *Steele, supra.* When the purchaser at a master's sale of an entire tract of land afterwards assigns an undivided interest in such purchase, there can be no legal redemption of such undivided interest by a judgment creditor. *Groves* v. *Maghee*, 72 Ill. 526; *Titsworth* v. *Stout*, 49 id. 78. *Bozarth* v. *Largent*, 128 id. 95.

When several distinct tracts of land are ordered sold by a master in chancery, by decree, it would no doubt be the. duty of the officer to offer for sale each tract separately;

BROWN *et al.* *v.* MCKAY *et al.* 323

Brief for the Defendants in Error. Opinion of the Court.

but when a mortgage is given on a certain quarter section, or a tract of land described by metes and bounds as one tract, and a decree of sale is rendered, in which the land is described as in the mortgage, we are aware of no rule that requires the master in chancery to offer the land for sale in subdivisions. *Davis* v. *Dresback*, 81 Ill. 393.

The court is not bound to ascertain whether it will be to the advantage of the defendant to have the mortgaged premises sold in parcels. 8 Eng. & Am. Enc. of Law, p. 232, n. 3.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

I. Numerous points are made in appellant's brief, but we shall only notice such of them as merit discussion. Among other things it is insisted, that there was no evidence that the *cestui que use* applied to the trustee to commence the suit, the provision in the trust deed being, that on application of the lawful holder of the notes, it should be lawful for the trustee to file a bill. The bill in this case was brought by the *cestui que use* himself, jointly with the trustee. The objection is, as a matter of course, without merit.

II. It is next objected, that there was no evidence of the execution of the notes. There being in this direct proceeding no denial of the technical execution of the notes, their execution was proved by their production in evidence. It, however, may be said that the complainant testified, that the notes were given by Brown, as a consideration for the purchase of the mortgaged premises.

III. It is next objected, that the option to declare the whole sum due given by the trust deed to the *cestui que use* was not exercised before the filing of the bill. It is provided in the trust deed, that if default be made in payment of the notes, or of the interest, or any part thereof, in the time and manner specified, the whole of the principal sum and interest secured by said notes shall, at the op-

tion of the legal holder thereof, become immediately due
and payable. It is to be observed, that no notice is re-
quired to be given to the debtor, of the exercise of the op-
tion to declare the whole of the indebtedness due. He, and
all persons claiming under him, after the recording of the
trust deed, were required to know that the whole sum
might, at any time, be declared due, after there was de-
fault in payment, according to the terms of the trust deed.
Not having provided in the deed for such notice, he, nor
those claiming under him, with notice of the right of elec-
tion, can be permitted to insist upon notice of the exercise
of the option as a condition precedent to the right to file
the bill. *Princeton L. & T. Co.* v. *Munson*, 60 Ill. 375;
*Heath* v. *Hall*, id. 344; *Harper et al.* v. *Ely*, 56 id. 179;
1 Jones on Mort., sec. 1182.

The option to declare the whole indebtedness due upon
default in payment, is given to the legal holder or holders
of the notes, to be exercised in their discretion, and with-
out notice to the mortgagor. No formula is to be ob-
served, nor particular form of expression necessary to be
used for the purpose of declaring the maturity of the whole
indebtedness. The formation of an intention in the mind
of the person who has the option to exercise his election
to declare the entire debt matured, accompanied by any
affirmative act or declaration evincing such determination,
will be sufficient.

The evidence is not entirely satisfactory, but tends to
show, that McKay, the legal holder of the notes, had on
several occasions expressed a determination to declare the
entire amount due and to foreclose the trust deed therefor,
and gave notice thereof to the defendants, or some of them.
And the point made could, perhaps, be determined upon
this evidence adversely to appellants. But it is unques-
tionable, that, before the filing of the bill, McKay had de-
termined to and did exercise his option to declare the whole
indebtedness, secured by the trust deed, immediately due

and payable, by the preparation of the bill and authorizing the same to be filed. By the bill filed at his instance, he not only alleges that he has declared the entire debt due and payable, but that it is, because of the default, due and payable. No notice of the election being required to be given, it can not be material that any particular time should elapse between the declaration and the filing of the bill. It could serve no purpose to require, that the declaration should be made a month, a week, or an hour before proceeding to foreclose the security. It therefore follows, that we are of opinion, that the determination on the part of the holder of the notes to file a bill for the foreclosure of the trust deed, for the entire indebtedness, and causing the same to be prepared and filed, in pursuance of such determination, was a sufficient election to declare the whole sum due, and to entitle him to maintain his bill.

IV. It is next insisted, that there was an extension of the time of payment, after the indebtedness became due, and there was thereby a waiver of the right to accelerate the maturity of the notes. It appears, that on December 4, 1891, when the first principal note became due, McKay extended the time of payment of that note until June 4, 1892, when another installment of interest would become due upon all of the notes. No fair construction of the evidence even tends, as we think, to show an extension beyond that time, for payment of the interest falling due at the latter date. So that, if it should be held that McKay had waived his right to accelerate the maturity of the last two notes, because of default in payment of the first note, there was clearly no such waiver of default in payment of the interest falling due June 4, 1892. When all the evidence is considered, it satisfactorily appears, that it was not understood by the parties that any delay in payment was to be granted beyond the latter date.

V. It is also urged, that the court erred in not decreeing that the indebtedness be so apportioned that an equitable

part of it should fall upon the undivided one-fifth of the land purchased by Johnson; and, it is said, that the decree should have so provided, or that a sale should have been ordered, in the inverse order of alienation. That is to say, that the indebtedness should have been so apportioned that the Johnsons might release their undivided fifth of the premises upon payment of one-fifth of the incumbrance; or, that the four-fifths in the hands of Reynolds should have been treated as the primary fund, for the payment and discharge of the mortgage lien, and resort had to the fifth, in the equity of redemption, held by Johnsons, only after the exhaustion of the four-fifths remaining in Reynolds.

It is alleged in the bill, that the purchasers of the equity of redemption purchased subject to the trust deed and assumed the indebtedness. That is, that Reynolds, on his purchase from Brown, the mortgagor, assumed the whole of it, and that Johnson, in his purchase from Reynolds of an undivided one-fifth of the equity of redemption, took subject to the trust deed, agreeing with Reynolds to pay a *pro rata* share of the incumbrance. This is admitted in the answer of adult defendants, and is expressly conceded in this court by counsel on both sides. The purchasers of the equity of redemption were required to know that every part of the land was subject to the lien of the trust deed. And it is well settled in this State, that a purchaser of a part of mortgaged premises can not redeem the part purchased by him by paying a proportion of the mortgage debt. The mortgagee is entitled to retain his lien upon every part of the mortgaged premises until the whole of the mortgage debt is paid. *Meacham* v. *Steele*, 93 Ill. 135; *Davis* v. *Dresback*, 81 id. 393. He will not be compelled, in equity, to release a portion of the premises upon payment of a proportionate part of the incumbrance upon the whole.

It is not shown or pretended, that any equities arose in favor of the Johnsons, under any contract with the McKays, or because of any conduct on their part, by which the Johnsons were induced to purchase from Reynolds. It does not appear, therefore, that they have any superior equities, entitling them to the relief asked.

Moreover, the rule seems to be, that a mortgagee of an entire interest in land can not be required to make sale of it in undivided interests. 2 Jones on Mort., 1617; *Frost* v. *Bevin*, 3 Sandf. Ch. 188. Without, however, entering on this subject, or discussion of the reasons on which the rule is based, it is manifest that a court of equity, in the absence of equities arising between the purchaser of the equity of redemption and the mortgagee, before attempting an apportionment, or requiring the sale in undivided interests, would require it to be shown, that the mortgagee would not be prejudiced thereby. No evidence was offered showing, or tending to show, that the undivided four-fifths, if sold separately, would bring sufficient to satisfy the four-fifths of the indebtedness, and costs remaining after the payment of one-fifth by Johnson; or, that it would bring as much proportionately, when thus sold, as it would if the land was sold altogether. It is clear, therefore, in any view of the case, that the court decreed correctly, in sustaining the demurrer to the cross-bill of the Johnsons, and in refusing to so apportion the indebtedness upon the land, that the Johnsons could redeem a part of the premises, by paying a *pro rata* share of the incumbrance. And it follows, necessarily, from the same considerations, that the court decreed correctly, in not requiring the undivided interest retained by Reynolds to be first sold in satisfaction of the entire mortgage indebtedness.

VI. The insistence, that the court should have marshalled the securities and subjected the portion of the land retained by Reynolds to the payment of the mortgage debt, before applying to the undivided interest of the Johnsons

therein, can not be sustained, for the reason, also, that no equities existed in favor of the latter, that the entire debt should be paid by Reynolds, or, that his interest in the land should constitute a fund for the extinguishment of the mortgage lien upon the interest held by the Johnsons.

The rule requiring the sale of land in the inverse order of alienation, and treating the portion of land retained by the mortgagor as the primary fund, out of which to satisfy the mortgage debt, rests upon the reason, that where the mortgagor sells a part of the mortgaged premises, relieved of the incumbrance, and retains a part himself, as between the mortgagor and such grantee the part held by the mortgagor, in equity and good conscience, should be first subjected to the payment of the mortgage debt. And the same principle would apply as between a purchaser of the equity of redemption, subject to the mortgage, as Reynolds here purchased, and a purchaser from him.

But, as said in *Briscoe* v. *Powers*, 47 Ill. 447, it is evident that this reasoning has no application to a case like the present, where the first purchaser, insisting upon the rule, has taken subject to the mortgage. As we have already seen, the court was powerless to apportion the debt and require the four-fifths remaining in Reynolds to be sold for four-fifths of the debt, and there were no equities existing, as between Johnson and Reynolds, that would require the latter's interest to be sold for the whole debt, and thereby release Johnson's interest from the lien of the mortgage. The right to compel resort to the interest of the mortgagor, presupposes that the debt has remained his, and that he is primarily liable for its payment. Hence, when he has paid it, either voluntarily, or his interest in the land has been thus applied, he would be entitled to no contribution from the portion of the land he had aliened. It is manifest, that that would not be so here, for, under the conceded facts, if the interest of Reynolds was taken

to pay the entire mortgage indebtedness, he would be entitled to a *pro rata* contribution from the Johnsons.

Without extending the discussion, we are of opinion that the Circuit Court decreed correctly, and the judgment of the Appellate Court will, accordingly, be affirmed.

*Judgment affirmed.*