JOHN J. QUARANTO & another *vs.* SAMUEL SILVERMAN.

Suffolk. October 4, 1962. — February 7, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Abuse of Process. Attachment.*

An assignee of a note payable in weekly instalments and a conditional sale contract signed by a purchaser of furniture, both containing a provision for accelerating the maturity of the entire balance of the debt upon default in payment of an instalment, was not liable to the purchaser for abuse of process on evidence that, at a time when two instalments in only a small amount were due and payable, the assignee, in order to "make secure" the debt, brought an action against the purchaser and attached her home upon a writ with an ad damnum of more than twice the entire unpaid balance of the debt, that the attachment re-

mained on the property for more than two years and was removed upon satisfaction of the debt in full through the weekly payments, that the purchaser never sought to dissolve or reduce the attachment, and that because of the attachment the purchaser was unable to obtain credit for the purpose of repairing the property or refinancing of a mortgage. [426–427]

Resulting damage is an essential element of the tort of abuse of process. [427–428]

The evidence in an action for abuse of process based on an attachment by the defendant of joint property of the plaintiff and his wife for a debt owed by the wife alone did not warrant a finding that the plaintiff, who made no attempt to secure a discharge of the attachment as it related to his interest during the two years the attachment was in effect, suffered damage from the attachment. [428]

TORT. Writ in the Superior Court dated March 6, 1959.

The action was tried before *Coddaire, J.*

*Joseph Landis* (*Julius Thannhauser* with him) for the defendant.

*Maurice M. Goldman* for the plaintiffs.

SPALDING, J. In this action of tort for abuse of process and excessive attachment, the plaintiffs, husband and wife, had a verdict. The case is here on the defendant's exceptions to the denial of his motions for a directed verdict and a new trial.

1. The evidence most favorable to the plaintiffs was as follows: In August, 1955, Mrs. Quaranto (hereinafter called the plaintiff) purchased from Northeastern Furniture Company (Northeastern) a rug, pad, and parlor set. The merchandise was to be paid for on the instalment plan, and a conditional sale contract and a promissory note were executed in blank by the plaintiff in favor of the furniture company. Although the contract introduced in evidence called for monthly instalments of $19.37, it was agreed that the plaintiff was to pay only $3 a week and "if she had a dollar more she would give it." In March, 1957, the defendant purchased some of Northeastern's accounts receivable, among which was the Quaranto account. At the time the defendant purchased this account he received from Northeastern the conditional sale agreement and note which the plaintiff had signed. The plaintiff agreed with the defendant to continue paying $3 a week, and she thereafter

made seventeen consecutive payments averaging $3 each. The defendant failed to collect the payment due on July 5, and on July 12 he demanded $6, but the plaintiff tendered him only $3, which he accepted. On this occasion an acrimonious dispute took place, during which the defendant threatened "strong legal action." The defendant called on the plaintiff on July 19 and demanded $9. The plaintiff told him that she did not have that amount and offered him $3 but he refused to accept it. Shortly thereafter the defendant called his attorney and explained the difficulty he was encountering in collecting the debt and said that he wanted security for his debt. Pursuant to his attorney's advice to bring suit and attach the plaintiff's property, the defendant turned the account over to his attorney for collection. By a writ dated July 19, 1957, an action was commenced by the defendant in a District Court against both plaintiffs. Under the writ, the ad damnum of which was $800, the plaintiffs' real estate (consisting of their house, which they claimed was jointly owned) was attached on July 22. The ad damnum in the writ was fixed by the defendant's attorney. At the time the action was begun it could have been found that the amount then due and payable to the defendant was $6. The unpaid balance on the account at that time was $356.30.

Following the attachment, the defendant "put . . . [the plaintiff's] name in the credit bureau." The defendant continued to call on the plaintiff and she made weekly payments until October, 1959, when the debt was paid in full. Thereupon, slightly more than two years after the attachment was made, it was removed. While the attachment remained it was the subject of discussion between the plaintiff and the defendant at various times. The defendant offered at one time to remove the attachment if the plaintiff would share the costs of it. The defendant told the plaintiff that the sole purpose of the attachment was to "make secure what to him was a lot of money." The plaintiffs took no action to dissolve or reduce the attachment. The plaintiff's husband testified that he "never bought any furniture from Northeastern . . ., that his wife did."

The plaintiffs, who were desirous of making extensive repairs to their house, were unable to obtain credit for that purpose because of the attachment. And a bank to which they had applied for a loan refused, because of the attachment, to refinance their mortgage. The plaintiffs admitted that even after the attachment had been removed the repairs had not been undertaken.

To constitute a cause of action for abuse of process "it must appear that the process was used to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed." *Gabriel* v. *Borowy,* 324 Mass. 231, 236, and cases cited. Prosser, Torts (2d ed.) § 100. "[I]t is immaterial that the process was properly issued, that it was obtained in the course of proceedings which were brought with probable cause and for a proper purpose or even that the proceedings terminated in favor of the person instituting or initiating them. The subsequent misuse of the process, though properly obtained, constitutes the misconduct for which the liability is imposed . . .." Restatement: Torts, § 682, comment a. Illustrative cases are *White* v. *Apsley Rubber Co.* 181 Mass. 339 (procuring plaintiff's arrest on a criminal charge in order to compel him to abandon a claim of right of occupation of a certain house), *Malone* v. *Belcher,* 216 Mass. 209 (attaching property in order to prevent sale), *Reardon* v. *Sadd,* 262 Mass. 345 (attachment of property to enforce a claim known to be groundless), *Jacoby* v. *Spector,* 292 Mass. 366 (successive wage attachments to induce plaintiff to enter into a contract through fear of loss of job), and *Lorusso* v. *Bloom,* 321 Mass. 9 (obtaining judgment and instituting supplementary process to collect a debt known to have been paid).

We need not decide whether an attachment of property for a debt not yet due is an ulterior purpose for which the process of attachment was not designed. Generally, the assignment of a debt carries with it every remedy or security that is incidental to the subject matter of the assignment and could have been used or made available to the

assignor. Williston, Contracts (3d ed.) § 432A. Corbin, Contracts, § 907. Restatement: Contracts, § 171 (2). See *Morris* v. *Bacon,* 123 Mass. 58; *Rogers* v. *Abbot,* 206 Mass. 270, 272; *Brazill* v. *Green,* 236 Mass. 93, 98. Accordingly, the defendant in purchasing the Quaranto account acquired the rights of his assignor (Northeastern) under the conditional sale agreement and note. The evidence shows that the defendant reasonably could have believed that the full amount of the debt was due on default of any instalment.[1] An attachment of $800 to secure an obligation of $356.30 is not unreasonably excessive. *Swartz* v. *Brockton Sav. Bank,* 318 Mass. 66, 68. Even if the taxable costs, interest, and the uncertain value of the plaintiffs' property would not justify such an amount, it was always open to the plaintiffs to seek a reduction of the attachment. G. L. c. 223, § 114. With respect to the wife, therefore, the defendant was entitled to a directed verdict.

It could have been found that the defendant should reasonably have known that the plaintiff's husband was not a party to the conditional sale contract and note, and the jury could have found that the husband was not otherwise liable for the debt incurred by his wife. It has been held that the intentional "attachment . . . of . . . property . . . to enforce a claim which [it could be found] the defendant knew was groundless . . . was an abuse of legal process." *Reardon* v. *Sadd,* 262 Mass. 345 at 348. See *Lopes* v. *Connolly,* 210 Mass. 487, 494. But, before a plaintiff may recover for the tort of abuse of process, he must show that damage occurred as the natural and probable consequences of the wrong done. *Swartz* v. *Brockton Sav. Bank,* 318 Mass. 66, 69. Damage is an essential element of the tort. Although

---

[1] Both the conditional sale agreement and note contained a provision that if the purchaser failed to pay any instalment the entire balance would be due at the option of the seller. Even though acceleration provisions are not self-operative (*Grozier* v. *Post Publishing Co.* 342 Mass. 97, 105–107), the commencement of the suit would make the acceleration provision operative. *Brown* v. *McKay,* 151 Ill. 315, 325. *Johnson* v. *Van Velsor,* 43 Mich. 208, 214–215. *St. Paul Title Ins. & Trust Co.* v. *Thomas,* 60 Minn. 140, 141. *Shoenterprise Corp.* v. *Willingham,* 258 N. C. 36. *Northampton Natl. Bank* v. *Kidder,* 106 N. Y. 221, 228. *Puget Sound Mut. Sav. Bank* v. *Lillions,* 50 Wash. 2d 799, 803. See annotation, 5 A. L. R. 2d 975.

the record is somewhat confused on the subject, it could have been found that the property attached was jointly owned by the plaintiffs; but the nature of the ownership does not appear. There is nothing to warrant a finding that the plaintiffs held the property as tenants by the entirety. See *Raptes* v. *Pappas,* 259 Mass. 37; *Licker* v. *Gluskin,* 265 Mass. 403, 407; *Osborne* v. *Lancaster, ante,* 164. There is no prohibition against the attachment of jointly held realty. G. L. c. 223, § 42. Even if the defendant had attached only the wife's interest in this property, the attachment would have been an encumbrance on the property and the damage, if any, to the husband would have resulted in any event.

If the attachment of the husband's interest would conceivably have injured him in some way apart from the attachment of his wife's interest, he could have applied for a discharge of the attachment as it related to his interest. G. L. c. 223, § 114. The husband's case stands no stronger by reason of the length of time the attachment was in effect. The damage claimed by the husband extended over a two year period but with the remedy of discharge readily available, he could not disregard this remedy and allow damages to mount; a party claiming injury by a tort has a duty to use reasonable means to minimize his damages. *Loker* v. *Damon,* 17 Pick. 284, 288. *Brian* v. *B. Sopkin & Sons, Inc.* 314 Mass. 180, 183, and cases cited. It follows that the husband had no case and the defendant's motion for a directed verdict should have been allowed.

*Exceptions sustained.*
*Judgment for the defendant.*