Donohue, J.
INTRODUCTION
In his Third Amended Verified Complaint and Jury Demand, the Plaintiff, John L. Bala, sets forth allegations of Abuse of Process (Count XIII) and Intentional Interference with Prospective Contractual Relations (Count XTV) against the Defendants. On February 23, 1998, the Defendants moved for summary judgment on these Counts of the Complaint, which Bala opposed. A hearing was held on April 24, 1998, at which time both parties presented arguments on the motion. For the following reasons, the Defendants’ Motion for Summary Judgment on these counts is denied.
BACKGROUND
1. Undisputed Facts
The undisputed facts, taken from the summary judgment record, are as follows. The Plaintiff, John Bala (Bala) was an employee-at-will at the Defendant, American Optical Corporation, from 1984 until 1994. Bala was the president of the Defendant, AOtec, Inc. from its incorporation in 1990 until his termination on May 13, 1994. AOtec, Inc. is a wholly owned subsidiary of American Optical Corporation. The Defendant, Maurice Cunniffe, is the sole shareholder and owner of American Optical Corporation.
While employed by the Defendants, Bala signed an Invention and Confidentiality Agreement. Under this agreement, Bala was required to keep confidential all inventions and secrets obtained in the course of his employment. In addition, the Invention and Confidentiality Agreement contained a noncompetition clause, preventing Bala from competing with the Defendants for one year after his termination. In a letter dated July 25, 1994 (two months after his termination), Cunniffe stated that as of that date, Bala was not in breach of the Invention and Confidentiality Agreement.
Bala was fired on May 13, 1994. At the time of his termination, Bala received a letter setting forth proposed severance pay and confidentiality terms. It is unclear whether Bala ever signed this letter, acknowledging agreement with the terms of the letter. In any event, Bala, then 55 years old, set off to start up a new company. The new company, Poly Optiks, would be located in Connecticut and would research and develop varied optical systems. Bala drafted a business plan setting forth the various aspects of Poly Optiks. Bala distributed the business plan to select associates and colleagues for their review and comment. Dr. Xiaohui Ning, an employee of the corporate Defendants, received the business plan to review. Despite the fact that his name was noted as a potential member of the Poly Optiks executive staff, Bala did not offer Dr. Ning a job with Poly Optiks at the time they met to discuss the business plan.
At that time, Bala also began seeking financial support for Poly Optiks. Bala sought financing from several places, including Connecticut Innovations, Inc. (CII), a quasi-governmental Connecticut operation which provides funding to new businesses in an effort to bring industry to the state. CII reviewed the Poly Optiks business plan, and an independent evaluation of the plan resulted in a strong recommendation to CII that funding be approved for Poly Optiks. The evaluation is dated October 26, 1994. However, on November 14, 1995, CII informed Bala that the Finance Committee rejected Poly Optiks’s investment application. CII cited the “dispute” over intellectual property rights, as well as the questionable sufficiency of financial resources in light of Poly Optiks’s plans.
2. Disputed Facts.
In August 1994, Cunniffe and other personnel of the corporate Defendants received a copy of the Poly Optiks business plan. Bala opines that the business plan does not reveal any secrets or inventions of the corporate Defendants. However, the Defendants, and their intellectual property attorney, Michael Cantor, dispute this conclusion, and suggest that the business plan constitutes misappropriation of trade secrets and confidential information, the solicitation of employees, and other causes of action for which Bala should be held responsible. The Defendants’ allegations are set forth in their Answer and Counterclaim to Verified Amended Complaint and Jury Demand. The Counterclaim was filed at Attorney Cantor’s suggestion, to protect the Defendants’ intellectual property and other business rights. .
*612 Bala contends that the Defendants’ Counterclaim constitutes an abuse of process and the intentional interference with contractual relations. For this reason, Bala amended his Complaint in 1996, and added, inter alia, Counts XIII and XIV, which are the subject of this motion for summary judgment. Bala did not add these Counts until after CII rejected the Poly Optiks funding application, and referred to the alleged dispute over ownership of the intellectual property as the reason for the rejection.
Count XIII alleges that the Defendants’ Counterclaim is without merit, and was filed solely to impede Bala’s attempt to start up Poly Optiks. Count XIV alleges that the Defendants’ actions, including the filing of the Counterclaim, amounts to an intentional interference with prospective contractual relations, namely prospective contractual relations with CII. Bala provided evidence that CII rejected the Poly Optiks application because the Defendants contested, by way of the Counterclaim, Bala’s right to the intellectual property contained within the business plan. Bala suggests that the Defendants were uneasy about Bala’s new company being a competitor, so the Defendants sought to eliminate Bala’s chances of obtaining financing, a necessary element to starting a company.
The Defendants maintain the position that the Counterclaim was filed as an attempt to protect their property rights. While Attorney Cantor opines that the business plan infringes on the Defendants’ intellectual property rights, Cunniffe, the owner of the corporate Defendants and the official designated to be deposed on behalf of the corporate Defendants, could not state with definiteness which property rights, if any, were being infringed or stolen, and whether the corporate Defendants’ involvement in certain optics fields was secret. Cunniffe was unable to provide much information regarding AOtec, Inc.’s advertising, products, or intellectual property rights. However, Cunniffe did state that he assumes that the Poly Optiks business plan and the technology to be used by Poly Optiks is the same as that of AOtec, Inc. Cunniffe’s assumption is based on the fact that Bala wrote the AOtec, Inc. business plan, as well as the Poly Optiks business plan.
DISCUSSION
1. Summary Judgment Standard
A parly is entitled to summary judgment upon a demonstration that there are no genuine issues of material fact and where the record presented entitles the moving party to judgment as a matter of law. See Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.R 56(c) (1997). The moving party bears “the burden of demonstrating that there is no genuine issue of material fact on every relevant issue.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “[A] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in rule 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that parly’s case.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party has met the burden under Rule 56(c), the opposing party must demonstrate genuine issues of material fact to avoid summaryjudgment entering on the moving party’s behalf. Pederson, 404 Mass. at 17; Mass.R.Civ.P. 56(c).
2. The Merits of the Motion for Summary Judgment
The arguments presented through this motion for summaryjudgment are as follows. Bala filed Counts XIII and XIV (abuse of process and intentional interference with contractual relations) after the Defendants filed their Counterclaim alleging, inter alia, misappropriation of trade secrets, solicitation of employees, breach of contract, etc. Bala contends that the Counterclaim is without merit and filed for an ulterior, illegitimate purpose. Bala alleges that the Counterclaim was designed to thwart Bala’s attempt to start up Poly Optiks, at which the Defendants were successiul.
The Defendants, on the other hand, illustrate the merits of the Counterclaim by suggesting that it was compulsory, and that it was necessary to protect the Defendants’ interest in any intellectual property that Bala may have misappropriated. The Defendants suggest that they are entitled to summaryjudgment on Counts XIII and XIV of Bala’s Complaint because Bala cannot demonstrate essential elements of the claims, namely, that the Defendants had an ulterior or illegitimate motive for filing the Counterclaim, and the Counterclaim does not constitute “process” (Count XIII); and that filing a Counterclaim is not intentional interference with business relations (Count XIV).
Abuse of process requires a demonstration that the offending party utilized legal process “ ‘for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed.’ Gabriel v. Borowy, 324 Mass. 231, 236 (1949), and cases cited.” Jones v. Brockton Public Markets, Inc., 369 Mass. 387, 389 (1975), quoting Quaranto v. Silverman, 345 Mass. 423, 426 (1963). The plaintiff must also suffer damages. See id.
Intentional interference with prospective contractual relations is “an extension of the tort of intentional interference with a contract.” See United Truck Leasing Corp. v. Geltman, 26 Mass.App.Ct. 847, 855 (1989). This cause of action requires a demonstration that the plaintiff had “a prospective relationship with [a third parly] that the law would protect, that [the defendant] interfered with that relationship, and that his conduct caused the plaintiff some ascertainable loss.” Id., citing Chemawa Country Golf, Inc. v. Wnuk, 9 Mass.App.Ct. 506, 510 n.3 (1980). In proving his case, Bala need not demonstrate that the Defendants acted with malice in filing the Counterclaim, but rather that *613 they acted “improperly.” See United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 816 (1990) (adopting “improperly” standard as set forth in Restatement (2d) of Torts, §766B (1979)). This standard incorporates intentional interference with an improper purpose or motive. See Geltman, 406 Mass. at 816.
The parties agree that Bala was employed by the Defendants for approximately 10 years as an employee-at-will. The parties further agree that Bala was fired on May 13, 1994, and that Bala attempted to start his own business, Poly Optiks.
However, the parties disagree as to the substance of their adversary’s claims. While the Defendants supply documents suggesting that some or all of the Poly Optiks business plan constituted infringement of AOtec, Inc.’s proprietary rights, Bala countered this information with documents suggesting that it is a mere assumption that Poly Optiks would be founded upon, and use the same technology as, AOtec, Inc. In addition, Bala provided sufficient information to demonstrate that another genuine issue of material fact is in dispute, namely, whether the Defendants’ Counterclaim was filed with an eye toward impeding the start up of Poly Optiks. Based upon the evidence presented in the summary judgment record, these issues are more appropriately determined by a jury. See Ladd v. Polidoro, 424 Mass. 196, 196-97 (1997) (proof of ulterior motive required in abuse of process claims).
The foregoing disputes make summary judgment inappropriate in this case. See Cassesso, 390 Mass. at 422; Community Nat'l Bank, 369 Mass. at 553. Even if this Court assumes that the Defendants unequivocally demonstrated that the Counterclaim was filed for legitimate purposes, without the intent to thwart Bala’s attempt to start up Poly Optiks, Bala has defeated that demonstration with ample documentation that any proper motive for the Counterclaim is in dispute. See Pederson, 404 Mass. at 17; Mass.R.Civ.P. 56(c).
The only possible argument which the Defendants may rely for summary judgment as to the abuse of process claim (Count XIII of the Complaint) is that a counterclaim does not constitute "process.” The Defendants are correct in stating that “process” is traditionally limited to three circumstances: “writs of attachment; the process used to institute a civil action; and the process related to the bringing of criminal charges.” Jones, 369 Mass. at 389-90. However, the present case is unique, as the abuse of process count did not arise until after two events occurred: first, the Counterclaim was filed, and second, CII rejected Poly Optiks’ financial application in response to a dispute over the ownership of intellectual property. It was subsequent to these happenings that Bala sought to amend his complaint to include the abuse of process count.
This Court has been unable to find one case in Massachusetts in which a plaintiff amended his complaint to include an abuse of process charge, in response to his opponent’s counterclaims. However, it would be erroneous for this Court to conclude, based upon the absence of case law, that this situation warrants a finding that the Counterclaim does not constitute "process.” To do so would provide an unfair tactical advantage to parties in the Defendants’ position who act with the knowledge that their delay in filing a claim may cause more harm to their opponent in the end. Such parties could avoid a potential abuse of process claim by lying in wait and striking at the most opportune moment. To leave the opponent helpless, without the benefit of an abuse of process claim, would only serve to circumvent the purpose of the cause of action which protects from abuses of process.
ORDER
For the foregoing reasons, it is hereby ORDERED that the Defendants’ Motion for Summary Judgment on Plaintiffs Abuse of Process and Intentional Interference with Prospective Contractual Relations Counts is DENIED.