Grabau, J.
Denise and John McHugh (the Plaintiffs) bring this action against the Defendant, Dr. Kilp, for her alleged negligence which resulted in Denise McHugh suffering from a perforated uterine wall, a severed uterine artery and a severed nerve. As a result of her injuries and due to nerve damage, the Plaintiffs claim that Ms. McHugh has lost most of the feeling in her vagina and clitoris and is unable (as a result of decreased blood flow) to achieve orgasm, become pregnant, carry a baby to term or give birth naturally. The Plaintiff, John McHugh, claims loss of consortium. The Plaintiffs have also brought similar claims against the Defendant hospital, Boston Regional Medical Center.
Both Plaintiffs were deposed on June 29-, 2000. On August 25, 2000, counsel for the Plaintiffs forwarded, to opposing counsel, the errata sheets on behalf of the Plaintiffs. The Plaintiffs claim that the Massachusetts Rules of Civil Procedure, specifically Rule 30(e), entitles them to make any [emphasis added] substantive or form related corrections that they deem necessary on the respective errata sheets. The Defendants contend that, while conceding that the majority of the changes are spelling corrections, the Plaintiffs have made substantiative changes in their testimony without stating the reasons for the change. Furthermore, the Defendants contend that the Plaintiffs’ actions preclude them from fairly examining the Plaintiffs in light of their amended testimony.
The Defendants now move this court to strike the errata sheet changes, or alternatively, to re-depose the Plaintiffs.
Plaintiffs’ Errata Sheet Changes Pertinent to this Motion[3]
The following excerpts pertain to the issue raised by the Defendants’ Motion to Strike Errata Sheet Changes:
Deposition of Denise M. McHugh
Question: Tell me what you recall about first seeing Dr. Kilp after your hysteroscopy?
Original answer: She came down to check on me and she said they [other hospital staff] might have pulled a muscle or something either transferring me to the operating table or putting my feet in the stirrups, and that she was going to observe, watch to see what happens. And she showed my husband and I pictures at that time.
Amended answer: She came down to check on me and I complained to her of the severe abdominal cramps and discomfort. Dr. Kilp said they [other hospital staff] might have pulled a muscle or something either transferring me to the operation table or putting my feet in the stirrups, and that she was going to observe and watch me to see what happens. And she showed my husband and I the pictures at that time. [No reason noted for the change on the errata sheet.)
P. 23, Deposition of Denise M. McHugh.
Question: I am going to show you what has been marked as Exhibit Number 2 and ask if you recognize that to be the picture or pictures that Dr. Kilp showed you?
Original answer: I have no idea.
Amended answer: I do not recognize those pictures as being the ones that Dr. Kilp showed me. [No reason noted for the change on the errata sheet.)
P. 25, Deposition of Denise M. McHugh.
Question: [Referring to a photograph that allegedly depicted the inside of Ms. McHugh’s uterus] Do you have a memory of Dr. Kilp showing you more than one photograph? [A. I don’t recall.] At least one photograph? [A. At least one photograph.] Of what you understood to be the inside of your uterus?)
Original answer: Yes.
Amended answer: She showed me photographs which she showed polyps and the fibroid tumor she removed . . . and she indicated that she removed polyps and a fibroid tumor. [No reason noted for the change on the errata sheet.)
P. 29, Deposition of Denise M. McHugh.
Question: What was your understanding of what the surgery revealed? Original answer: I had a perforated uterus.
Amended answer: I had a perforated uterus and a severed artery. [No reason noted for the change on the errata sheet.]
P. 35, Deposition of Denise M. McHugh.
Question: And are you claiming that you’re uncertain whether or not you can become pregnant because of complications of the February 7, 1996, surgery?
Original answer: Yes.
*684 Amended answer: No. [No reason noted for the change on the errata sheet.]
P. 43, Deposition of Denise M. McHugh.
Question: Has any doctor ever told you that because of the uterine perforation and the second surgery to repair that perforation that you would have difficulty becoming pregnant?
Original answer: Yes.
Amended answer: No. [No reason noted for the change on the errata sheet.]
P. 43, Deposition of Denise M. McHugh.
Question: Were you satisfied with your ability to achieve orgasm after you began taking the Viagra[4] and testosterone?
Original answer: I can’t recall. Anything is better than nothing I suppose.
Amended answer: No, but anything is better than nothing I suppose. [No reason noted for the change on the errata sheet.]
P. 57, Deposition of Denise M. McHugh.
Question: Did Dr. Fine say anything critical of Dr. Kilp when you saw him in this office sometime later?
Original answer: No.
Amended answer: Yes. [No reason noted for the change on the errata sheet.]
P. 68, Deposition of Denise M. McHugh.
Question: Have the events of February 1996 [the alleged negligent surgery performed by Dr. Kilp] affected you in any other way that we have not discussed?
Original answer: Not that I can recall.
Amended answer: The event[s] of February 1996 have [a]ffect[ed] me in many ways all of which I have described in this deposition. I am not sure exactly what you are referring to. [No reason noted for the change on the errata sheet.]
P. 75, Deposition of Denise M. McHugh.
Question: Is it your position as you sit here today that the hospital is responsible for Dr. Kilp’s actions?
Original answer: My understanding is that a blood test was ordered and the results were not picked up for probably five hour or so.
Amended answer: My understanding is that a blood test was ordered and the results were not picked up for probably five hour or so. Dr. Kilp is affiliated with the hospital and there were other medical providers and employees who treated me at the hospital w[h]ere I sustained the injuries. [No reason noted for the change on the errata sheet.]
P. 98, Deposition of Denise M. McHugh.
Question: (Referring to whether or not it is the Plaintiffs position that some hospital staff person at the lab or someone who was suppose to report blood test results did not report them) [I]s [that] your basis for this suit against the hospital?
Original answer: Also, once it was determined that I did need a second surgery and it was an emergency, it took them over two-and-a-half hours to get an operating room ready.
Amended answer: Also, once it was determined that I did need a second surgery and it was an emergency, it took them over two-and-a-half hours to get an operating room ready. The actions of the employees/agents of the hospital and doctors during my surgeries and following my surgeries are the basis of my claims against the hospital. [No reason noted for the change on the errata sheet.]
P. 99, Deposition of Denise M. McHugh.
Question: (Referring to complications that Ms. McHugh suffered as a result of the waiting time) What complications did you suffer?
Original answer: I was kept in pain much longer which required blood transfusions; which had I known, I would have donated my own blood.
Amended answer: I was kept in pain much longer which required blood transfusions; which had I known, I would have donated my own blood. In addition, the delay required emergency surgery rather than a different procedure which would have been less invasive. [No reason noted for the change on the errata sheet.]
P. 100, Deposition of Denise M. McHugh.
Question: (Referring to that it is the Plaintiffs opinion that Dr. Kilp was an agent of the Boston Regional Medical Center) Can you tell me what facts you based that claim on?
Original answer: Just through talks with my attorney.
Amended answer: Dr. Kilp was affiliated with the hospital. Dr. Kilp worked for the hospital. The surgeries were performed at the hospital. The post operative treatment which I received were at Boston Regional Medical Center. [No reason noted for the change on the errata sheet.]
P. 126, Deposition of Denise M. McHugh.
Deposition of John. McHugh.
Question: In number 13 (referring to answers of the Plaintiffs, John McHugh’s, to Boston Regional Medical Center’s interrogatories), you state, “As a result of the defendant’s negligence, I have suffered a great deal of emotional distress and the emotional stress has affected my life-style and my marriage.” And my question is: How so?
Original answer: I answered that. Our relations, we don’t — as far as sexual relations, it’s not like it was. Emotionally, she is not the same person. So, therefore, it’s changed. I have to watch thing[s] I do and *685 things I say as not to upset her. I mean, I don’t know how to go further as far as what you’re looking for.
Amended answer: I answered that. Our relations, we don’t — as far as sexual relations, it’s not like it was. I live every day knowing I can never satisfy my wife sexually. I live every day feeling sexually inadequate. Emotionally, she is not the same person. So, therefore, it’s changed. I have to watch thing I do and things I say as not to upset her. I mean, I don’t know how to go further as far as what you’re looking for. [No reason noted for the change on the errata sheet.]
P. 41, Deposition of John McHugh.
DISCUSSION
Rule 30 (e) of the Massachusetts Rules of Civil Procedure permits a deponent to alter deposition testimony when corrections are to be made to the deposition transcript and the entire transcript is then signed. Mass.R.Civ.P. 30(e) provides:
(e) Submission to Witness; Changes; Signing. When the testimony is fully transcribed the deposition shall be submitted to the witness for examination and shall be read to or by him, unless such, examination and reading are waived by the witness and by the parties. Any changes in form or substance which the witness desires to make shall be entered upon the deposition by the officer with a statement of the reasons given by the witness for making them. The deposition shall then be signed by the witness, unless the parties by stipulation waive the signing or the witness is ill or cannot be found or refuses to sign. If the deposition is not signed by the witness within 30 days of its submission to him, the officer shall sign it and state on the record the fact of the waiver or of the illness or absence of the witness or the fact of the refusal to sign together with the reason, if any, given therefor; and the deposition may then be used as fully as though signed, unless on amotion to suppress under Rule 32(d)(4) the court holds that the reasons given for the refusal to sign require rejection of the deposition in whole or in part.
The Massachusetts Rule is modeled after the Federal Rule and is similar with immaterial exception.[5] The Plaintiffs’ changes that are related to spelling and grammar are inconsequential, therefore they do not have to be addressed further. The Plaintiffs’ errata sheet have “changes in substance” to their respective depositions (discussed infra), as they add to the detail of; contradict; or make original answers of each deposition incomplete without further testimony. See U.S. v. Piqua Engineering, Inc., 152 F.R.D. 565, 566-67 (D.C. Ohio 1993). Arthur R. Miller, Federal Practice and Procedure §2118 (1994). Several changes made by Ms. McHugh during her deposition have been changed from “no” to “yes” or vice versa. Changes such as these may alter the direction and nature of the inquiries of the examining attorney and therefore have effect on the scope, nature, and opportunity to cross-examine. Also, some of the substantial additions to the original answers appearing in the Plaintiffs’ deposition errata sheets may warrant further inquiry into other discoverable matters. For example, Mr. McHugh’s response to the inquiry of the manner and type of emotional distress he had suffered as a result of his wife’s injuries and its effects on his life-style and marriage at page 41, line 8. Mr. McHugh first offered that:
Our relations, we don’t — as far as sexual relations, it’s not like it was. Emotionally, she is not the same person. So, therefore, it’s changed. I have to watch thing I do and things I say as not to upset her. I mean I don’t know how to go further as far as what you’re looking for.
In his amended answer, Mr. McHugh stated that he lives “every day knowing I [he] can never satisfy my wife sexually. I [he] lives every day feeling sexually inadequate.” Further, the Plaintiff offered no reason for the change on the errata sheet. This amended response, if initially offered at the deposition, would have substantially altered the direction or tenor of questioning by a reasonably acting attorney examiner. The attorney knowing that the deponent has focused on damages that he (the husband), rather than she (the wife), may have suffered would have continued a line of questioning relevant to his, rather than her, damages, if any. By virtue of Mr. McHugh’s first response, the Plaintiff does not offer facts relating to damages for his loss of consortium. If the new testimony is allowed as amended through the errata correction sheets, the facts now set forth a claim for Mr. McHugh’s loss of consortium without any cross-examination by the opposing attorney.
Similarly, Ms. McHugh has similar instances of changing answers that would have substantially altered the direction or tenor of questioning by a reasonably acting attorney examiner. In one such instance (at p. 100 of Ms. McHugh’s deposition), the attorney examiner asked about the injuries that the Plaintiff had suffered as a result of the extended waiting period between her surgery and the discovery of her alleged complications. Ms. McHugh’s original response was that she “was kept in pain much longer which required blood transfusions; which had [she] known, [she] would have [previously] donated [her] own blood."
Ms. McHugh’s amended testimony added that “the delay required emergency surgery rather than a different procedure which would have been less invasive.” This amended testimony would have prompted the questioning to focus on the foreseeability, causation, and the existence and extent of damages in relation to the incident. Ms. McHugh offered no reason for the change on the errata sheet and the examining attorney would be unable to cross-examine Ms. McHugh on this *686 matter if the amendment is allowed without reopening the deposition.
The Plaintiffs in this case have not abided by all of the procedural requirements of Mass.R.Civ.P. 30(e). Although the Plaintiffs made changes within the respective time frame, have signed their respective errata sheets certifying under the pains and penalties of perjury that they have answered the relevant inquiries raised in the deposition to the best of their knowledge, the Plaintiffs have not, however, offered “statements of the reasons” for making the changes pursuant to the rule. See Mass.R.Civ.P. 30(e). Based of this procedural defect, the Defendants are entitled to re-depose the Plaintiffs pursuant to Rule 30 and as some federal case law implicates. See e.g. Hawthorne Partners v. American Tel. Tech., Inc., 832 F.Sup. 1398, 1407 (N.D.Ill. 1993); Colin v. Thompson, 16 F.R.D. 194, 195 (W.D.Mo. 1954).
Notwithstanding the procedural shortcomings, because of an absence of Massachusetts authority, I have considered the federal decisions regarding the interpretation of Fed.R.Civ.P. 30(e) for guidance in ordering remedial measures.
The Federal Rule 30(e) has been interpreted to allow a deponent to make changes in a deposition even if the changes contradict original answers and the reasons for the changes are unconvincing. Podell v. Citicorp Diners Club Inc., 914 F.Sup. 1025, 1034 (S.D.N.Y. 1996); Lugtig v. Thomas, 89 F.R.D. 639, 652 (N.D.Ill. 1981) (not examining the sufficiency, reasonableness, or legitimacy of the reason); Colin v. Thompson, supra at 195 (stating whether the deponents “reasons are good or not will not impair his right to make the changes”). However, other federal courts have focused on the manner in which the changes are made. Barlow v. Esselte Pendaflex Corp., 111 F.R.D. 404, 406-07 (M.D.N.C. 1986) (the changes must be made in the correct manner); Hawthorne Partners, supra at 1406-07 (indicating that the corrections were not made on the correctform); Sanford v. CBS, Inc., 594 F.Sup. 713, 715 (N.D.Ill. 1984) (requiring that the reasons be specific for each proposed change); Architectural League of New York v. Barios, 404 F.Sup. 304, 311 (D.C.N.Y. 1975) (changes made by a deponent with his own hand without a reason why were inoperative).
Some federal courts further restrict the rule by considering the substance of the changes and hold that corrections on errata sheets which alter the substance of the testimony cannot be made. See e.g., Duff v. Lobdell-Emery Mfg. Co., 926 F.Sup. 699, 803 (N.D.Ind. 1996); S.E.C. v. Parkerburg Wireless Ltd. Liab. Co., 156 F.R.D. 529, 523 & n. 11 (D.D.C. 1994); Greenway v. International Paper, 144 F.R.D. 322 (W.D.La. 1992) (“[t]he Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all and then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination”); Rios v. Bigler, 847 F.Sup. 1538 (D.Kan. 1994) (“Although the errata sheet may be used to correct error or to clarify or change an answer when a question is misunderstood, it may not be used to allow a person to alter what has been said under oath”).
Massachusetts Rules of Civil Procedure 30(e) could be interpreted to allow a deponent to indiscriminately correct errors of form or substance without judicial discretion over factual deviation. This interpretation may promote a deponent to manipulate the discovery process to suit his legal needs for a particular cause of action. In Massachusetts, the legal process may not be used for an ulterior or illegitimate purpose. Beccy v. Puccianelli, 387 Mass. 589, 595 (1982), quoting Quaranto v. Silverman 345 Mass. 423, 426 (1963). A party cannot create a disputed issue of fact by the expedient of contradicting by affidavit statements previously made under oath at a deposition. O’Brien v. Analog Devices, Inc., 34 Mass.App.Ct. 905, 906 (1993), accord Morrell v. Precise Engineering, Inc., 36 Mass.App.Ct. 935, 937 (1994) (“[t]he plaintiffs affidavit is not some sort of magic wand that can wave away the damage to his claim contained in the testimony previously given at the disposition hearing”); see Spillos v. Cohen, 38 Mass.App.Ct. 338, 340 n. 2 (1995) (a historical discussion of this doctrine).
Because nothing in Rule 30(e) provides that the original answers of a deponent must be stricken, the original answers of the Plaintiffs' depositions may remain part of the record and be read, along with the new answers or additions, if any, at trial. Lugtig v. Thomas supra at 641. The policy considerations behind this approach is that “[t]he witness who changes his testimony on a material matter between giving of his deposition and his appearance at trial may be impeached by his former answers, and the cross-examiner and the jury are likely to be keenly interested in the reasons they changed their testimony. There is no apparent reason why the witness who changes his mind between the giving of his deposition and its transcription should stand in any better case." Innovative Marketing & Technology, L.L.C. v. Norm Thompson Outfitters, 171 F.R.D. 203, 205 (W.D.Tx. 1997).
ORDER
For the foregoing reasons, it is ORDERED that the Defendants’, Jeanne Marie Kilp and Boston Regional Medical Center’s, Motion to Strike Errata Sheet Changes and/or Re-depose the Plaintiffs be DENIED in part and ALLOWED in part. The Defendants are allowed to re-depose the Plaintiffs limited to matters directly affected by the amended answers as discussed infra, including why the changes were made. It is further ORDERED that the original answers to the Plaintiffs' deposition remain part of the record.

The deposition amendments are taken from Denise and John McHugh’s June 29, 2000 depositions and respective errata sheets, signed and dated on August 25, 2000.

Viagra is a prescription medicine that promotes sexual activity in men and women.

Fed.R.Civ.P. 30(e) provides: “Ivjarious changes are made in this subdivision to reduce problems sometimes encountered when depositions are take stenographically. Reporters frequently have difficulties obtaining signatures — and the return of depositions — from deponents. Under the revision pre-filing review by the deponent is required only if requested before the deposition is completed. If review is requested, the deponent will be allowed 30 days to review the transcript or recording and to indicate any changes in form or substance. Signature of the deponent will be required only if review is requested and changes are made.”