JOSEPH F. BEECY & another[1] vs. WILLIAM J.C. PUCCIARELLI & another.[2]

Middlesex. October 7, 1982. — November 9, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & O'CONNOR, JJ.

*Attorney at Law. Malicious Prosecution. Abuse of Process. Emotional Distress. Negligence, Commencement of litigation. Consumer Protection, Availability of remedy. Actionable Tort.*

In an action against an attorney for malicious prosecution based on the attorney's erroneous institution of a collection action on behalf of his client, a department store, against two of the store's charge account customers, the plaintiffs failed to state a claim of malice upon which relief could be granted where they did not plead facts demonstrating that the attorney knew there was no probable cause for the collection action and either personally acted with an improper motive or knew that his client was motivated by malice. [593-595]

In an action against an attorney for abuse of process based on the attorney's erroneous commencement of a collection action on behalf of his client, a department store, against two of the store's charge account customers, the plaintiffs stated no claim upon which relief could be granted inasmuch as they did not allege that the process was used in the collection action for an ulterior purpose. [595-596]

In an action against an attorney for intentional infliction of emotional distress based on the attorney's erroneous commencement of a collection action on behalf of his client, a department store, against two of the store's charge account customers, the plaintiffs stated no claim upon which relief could be granted where the attorney's alleged conduct could not be characterized as extreme and outrageous. [596]

This court declined to hold an attorney liable for negligence to a party against whom he erroneously commenced a collection action on behalf of his client, a department store. [597]

In an action against an attorney to recover damages for his erroneous commencement of collection proceedings on behalf of his client, a department store, against two of the store's charge account customers,

---

[1] The other plaintiff is Louise J. Beecy, Mr. Beecy's wife.

[2] The other defendant is Wm. Filene's Sons Company, Inc.

the plaintiffs stated no claim upon which relief could be granted under G. L. c. 93A, as in effect at the time of the attorney's alleged wrongful conduct, where the attorney did not deal directly with the plaintiffs in a purchase of goods or services.  [598]

CIVIL ACTION commenced in the Superior Court Department on March 16, 1981.

The case was heard by *Dimond, J.,* on a motion to dismiss.

The Supreme Judicial Court granted a request for direct appellate review.

*Stuart F. Liss (Victoria Q. Queeney* with him) for the plaintiffs.

*Erik Lund (Sherry Y. Mulloy* with him) for William J.C. Pucciarelli.

HENNESSEY, C.J.  The plaintiffs, Mr. and Mrs. Joseph F. Beecy, brought this action alleging various common law tort and statutory claims[3] for injuries allegedly suffered after Mr. Pucciarelli, an attorney for Wm. Filene's Sons Company, Inc. (Filene's), erroneously commenced a collection action on behalf of his client, against the Beecys.  The defendant attorney, Mr. Pucciarelli, filed a motion, under Mass. R. Civ. P. 12(b)(6), 365 Mass. 754 (1974), to dismiss all of the claims asserted against him in this action on the grounds that the plaintiffs failed to state any claim upon which relief could be granted and that the alleged wrongful conduct is protected by an absolute privilege.  After a hearing, a judge of the Superior Court allowed Mr. Pucciarelli's motion to dismiss and then ruled, in his memorandum and order for judgment, that the Beecys' defamation claim was barred by Mr. Pucciarelli's absolute privilege and that the other claims should be dismissed under "conventional tests of liability."

---

[3] The claims were based upon theories of defamation, intentional infliction of emotional distress, invasion of privacy, abuse of process, malicious prosecution, negligent and grossly negligent breach of duty, violation of the Canons of Ethics and Disciplinary Rules Regulating the Practice of Law, violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692(a)-(n) (Supp. IV 1980), violations of G. L. c. 93, § 49, and of G. L. c. 93A, § 2.

The judge issued an order for entry of a separate, final judgment as to Mr. Pucciarelli and the Beecys appealed. They contend that the malicious prosecution, abuse of process, intentional infliction of emotional distress, negligence, and G. L. c. 93A claims[4] should not have been dismissed either on a theory of privilege or under conventional tests of liability.

There was no error. We do not reach the issue whether there is any relevant attorney's privilege, or whether, if there is such privilege, we should now redefine or abolish it. Rather, we conclude that the plaintiffs have failed to assert any claim for which relief can be granted.

The Beecys allege[5] that in late 1977, or early 1978, Mrs. Beecy received a telephone call from a representative of Filene's who inquired why Mrs. Beecy was not using her charge account. Mrs. Beecy responded that her account was active and had been used recently. She also explained that because of the similarity in names, Filene's was confusing her account with that of her husband's uncle, Joseph F. Beecy (deceased in 1971) or the account of her husband's aunt, Alice Beecy, also known as Mrs. Joseph F. Beecy (deceased in 1976).

In early 1978, Mrs. Beecy received a telephone call from a man who stated that he was an attorney in Mr. Pucciarelli's office and he informed her that she had an overdue balance on her charge account. Mrs. Beecy told the attorney that the balance in her account was current and that her account was being confused with someone else's account, perhaps her husband's uncle or aunt. The Beecys allege that, although Filene's and Mr. Pucciarelli had been placed on notice regarding their apparent confusion in not differentiating Mrs. Beecy's charge account from that of another person, Filene's and Mr. Pucciarelli failed to undertake an ade-

---

[4] The plaintiffs have not challenged the judgment on any other theory originally advanced.

[5] Allegations of fact in a complaint are accepted as true for purposes of evaluating whether the complaint states a claim upon which relief may be granted. *Nader* v. *Citron*, 372 Mass. 96, 98 (1977). Therefore, we recite the facts as alleged by the Beecys.

quate investigation to determine whether Mrs. Beecy's account was, in fact, past due in early 1978. As a result of this alleged negligence Mr. Pucciarelli, on behalf of Filene's, commenced a collection action against the plaintiffs on or about May 19, 1978.

On or about June 5, 1978, the plaintiffs were notified by a letter from Mr. Pucciarelli that Filene's had commenced the collection action. Upon receipt of the letters, Mrs. Beecy telephoned Filene's and was assured by a person in the credit department that her charge account had not been referred to Mr. Pucciarelli for the institution of a collection action. There was, however, a delinquent account in a name identical with Mr. Beecy's. On or about June 9, 1978, the Beecys received a letter dated June 7, 1978, from Mr. Pucciarelli advising them that he had erroneously filed suit against them. The plaintiffs allege, however, that Mr. Pucciarelli did not file a notice of voluntary dismissal with prejudice[6] and that he did not instruct the Middlesex County deputy sheriff to recall the summonses and complaints. On June 9, 1978, the Beecys were each served with copies of a summons and the complaint in the collection action. On June 11, 1978, Mr. Beecy suffered a stroke that resulted in permanent physical, mental, and emotional disabilities. Those injuries, as well as others, the Beecys maintain, have been caused by Mr. Pucciarelli's actions.

The Beecys' first contention is that their claim of malicious prosecution should not have been dismissed under either a theory of privilege or conventional tests of liability. We disagree. The Beecys urge us to abandon the limitations that we established in *Bicknell* v. *Dorion,* 16 Pick. 478, 490 (1835), on malicious prosecution actions against attorneys. In *Bicknell,* we concluded that an action for malicious prosecution could not be brought against an attorney who had commenced litigation against another person unless the attorney commenced the suit without the authority of the

---

[6] Mr. Pucciarelli, however, did file a notice of voluntary dismissal *without* prejudice on June 8, 1978.

named plaintiff or unless the attorney and the named plaintiff had conspired or otherwise knowingly agreed to commence a groundless lawsuit. *Id.* While we recognize that there are compelling reasons to abolish these limitations upon malicious prosecution suits against attorneys,[7] it is not necessary to address the immunity issue in this case because the Beecys have failed to allege all of the elements for that cause of action.

To assert a proper claim of malicious prosecution, the Beecys must plead facts that demonstrate that they were damaged because Mr. Pucciarelli prosecuted the collection action with malice and without probable cause, and that the collection action terminated in their favor. See *Hubbard* v. *Beatty & Hyde*, 343 Mass. 258, 261 (1961). The Beecys' claim fails because they have alleged no facts demonstrating that Mr. Pucciarelli acted with malice.[8] To succeed on a claim of malice in a malicious prosecution action, the Beecys must demonstrate that (1) Mr. Pucciarelli knew that there was no probable cause for the prosecution *and* (2) Mr. Pucciarelli either personally acted with an improper motive or he knew that Filene's was motivated by

---

[7] The present view of many courts is that an attorney is neither absolutely immune from liability for malicious prosecution actions nor liable *only* under the limited conditions enunciated in *Bicknell*. See, e.g., *Nelson* v. *Miller*, 227 Kan. 271, 282-283 (1980). Rather, these courts have determined that an attorney may be held liable for malicious prosecution if the claimant pleads and proves that "he was damaged because the attorney prosecuted a proceeding with malice and without probable cause and that the proceeding terminated in the claimant's favor" (footnote omitted). R.E. Mallen & V.B. Levit, Legal Malpractice § 49, at 101 (2d ed. 1981). See also cases cited in *id.* § 49, at 101-102 n.87.

These courts recognize that access to the judicial system, unfettered by threats of retaliatory litigation, should be encouraged. See *Berlin* v. *Nathan*, 64 Ill. App. 3d 940, 948 (1978), cert. denied, 444 U.S. 828 (1979). They reason, however, that attorneys should not be allowed to bring with impunity suits for harassment, vexation, or coercion of an unwarranted settlement. See R.E. Mallen & V.B. Levit, *supra* § 48, at 100, and cases cited. Thus, these courts conclude that allowing malicious prosecution actions will achieve a balance between these two concerns. *Id.*

[8] Therefore, we do not address the Beecys' contentions with regard to the other elements of this cause of action.

malice.[9]  See *Nelson* v. *Miller,* 227 Kan. 271, 282-283
(1980); Restatement (Second) of Torts § 674, Comment d
(1977); R.E. Mallen & V.B. Levit, *supra* § 59, at 121, and
cases cited.  See also *Berlin* v. *Nathan,* 64 Ill. App. 3d 940,
948 (1978), cert. denied, 444 U.S. 828 (1979) (wilful and
wanton conduct does not constitute malicious conduct, par-
ticularly where no improper motive of any kind is suggest-
ed).  The Beecys do not allege any improper motive on
Mr. Pucciarelli's part.

The Beecys emphasize that the existence of malice may be
inferred from the lack of probable cause.  See *Seelig* v. *Har-
vard Coop. Soc'y,* 355 Mass. 532, 537 (1969).  The rationale
for allowing such an inference is that in some cases the "lack
of probable cause may be so obvious that the logical infer-
ence is that the prosecution resulted not from an error, but
from malice."  R.E. Mallen & V.B. Levit, *supra* § 59, at
124.  See also *Wills* v. *Noyes,* 12 Pick. 324, 326 (1832). Even
if it may be concluded that Mr. Pucciarelli acted without
probable cause in filing the collection action, malice could
not reasonably be inferred from his actions.  Mr. Pucciarelli
did commence the collection action against the Beecys after
Mrs. Beecy informed an attorney in his office that they were
the wrong Beecys.  Nevertheless, a person of identical name

---

[9] In *Wills* v. *Noyes,* 12 Pick. 324, 327-328 (1832), we stated: "The ma-
lice necessary to be shown in order to maintain this [malicious prosecu-
tion] action, is not necessarily revenge or other base and malignant pas-
sion. Whatever is done *wilfully and purposely,* if it be at the same time
*wrong and unlawful,* and that known to the party, is in legal contempla-
tion malicious.  That which is done contrary to one's own conviction of
duty, or with a wilful disregard of the rights of others, *whether it be to
compass some unlawful end, or some lawful end by unlawful means,* or,
in the language of the charge, *to do a wrong and unlawful act knowing it
to be such,* constitutes legal malice" (emphasis supplied).  Our reasoning
in *Wills* demonstrates that an improper motive is essential.  See also
*Ripley* v. *McBarron,* 125 Mass. 272, 274 (1878) ("If the defendant, in
making the complaint, acted in good faith and with the honest purpose of
bringing an offender to justice, the prosecution, even if it can be held to be
without probable cause, was not malicious").  That improper motive may
be one of vexation, harassment, annoyance, or attempting to achieve an
unlawful end or a lawful end through an unlawful means.  In this case,
however, no improper motive is suggested.

had a delinquent account with Filene's. Further, Mr. Pucciarelli promptly filed a notice of voluntary dismissal after Mrs. Beecy telephoned the credit department at Filene's. Mr. Pucciarelli also sent a letter to the Beecys apologizing for his mistake and informing them that the suit had been dismissed. He did fail to instruct the sheriff not to serve the summonses and complaints on the Beecys. Viewing the Beecys' allegations in a light most favorable to them, we conclude, however, that Mr. Pucciarelli's actions do not support a conclusion that his actions were maliciously intended.

The Beecys argue that, if Mr. Pucciarelli commenced the collection action when he either knew that he was suing the wrong parties or should have known had he undertaken a reasonable investigation, malice may be inferred. Although there may be situations where such allegations would be sufficient to indicate an improper motive, the actual allegations in this case belie any malice on Mr. Pucciarelli's part. Cf. *Adelman* v. *Rosenbaum,* 133 Pa. Super. 386, 388-389 (1938) (malice was demonstrated where attorney continued to prosecute action after receiving notification that he was suing wrong party by way of two phone calls from wrongly-sued party, a communication from the sheriff sent to levy upon property, two calls from an attorney hired to represent wrongly-sued party, and an offer to compare signatures); *Peerman* v. *Sidicane,* 605 S.W.2d 242, 245 (Tenn. Ct. App. 1980) (malice could be demonstrated where attorney continued to press case without consent or knowledge of client, made allegations in complaint predicated on pure speculation on attorney's part and not on knowledge given attorney by client, and prosecuted groundless appeal without consent of client).

The Beecys' claim of abuse of process similarly fails. To prevail on a cause of action for abuse of process "it must appear that the process was used to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed." *Quaranto* v. *Silverman,* 345 Mass. 423, 426 (1963),

quoting *Gabriel* v. *Borowy*, 324 Mass. 231, 236 (1949). The Beecys have not alleged that Mr. Pucciarelli used the process in the collection action for any ulterior purpose. They suggest that we have held that mere commencement of litigation to enforce a claim which the person commencing the litigation knows or reasonably should have known to be groundless constitutes legal abuse of process without proof of any ulterior purpose. We disagree. Each of the cases relied on by the Beecys involved an alleged or proven use of process for an ulterior purpose by the party[10] using the process.[11]

The Beecys' claim of intentional infliction of emotional distress was also properly rejected. In *George* v. *Jordan Marsh Co.*, 359 Mass. 244, 255 (1971), we recognized that "one who, without a privilege to do so, by extreme and outrageous conduct intentionally causes severe emotional distress to another, with bodily harm resulting from such distress, is subject to liability for such emotional distress and bodily harm." Mr. Pucciarelli's conduct may not be characterized as "conduct [that] was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community.'" *Agis* v. *Howard Johnson Co.*, 371 Mass. 140, 145 (1976), quoting Restatement (Second) of Torts § 46, Comment d (1965). Therefore, without addressing any of the other elements of this cause of action, including the issue of privilege, we uphold the dismissal of the lower court.

---

[10] We point out that the Beecys cite no cases decided in this jurisdiction where an *attorney*, as opposed to a *party*, was held liable for abuse of process. Thus, an issue of immunity is raised, although we decline to address it.

[11] See *Quaranto* v. *Silverman*, 345 Mass. 423 (1963) (attachment to obtain security for a debt); *Lorusso* v. *Bloom*, 321 Mass. 9 (1947) (supplementary process used to collect twice on debt already paid); *Reardon* v. *Sadd*, 262 Mass. 345 (1928) (attachment to avoid paying amount due for services performed in connection with attached property). *Lopes* v. *Connolly*, 210 Mass. 487 (1912), involved no finding of abuse of legal process and also involved the actual interference with the plaintiff's receipt of wages rather than the mere service of a complaint instituting an action, as occurred here.

The Beecys maintain that we should allow an adverse party to recover damages from an attorney for the negligent commencement of litigation against the adverse party. The Beecys recognize that no court has ever allowed the type of negligence claim that they presently urge us to adopt. See Mallen & Roberts, The Liability of a Litigation Attorney to a Party Opponent, 14 Willamette L.J. 387, 389 (1978). Indeed, many courts have expressly rejected such a cause of action.[12] These courts have reasoned that creating "a duty in favor of an adversary of the attorney's client would create an unacceptable conflict of interest which would seriously hamper an attorney's effectiveness as counsel for his client" (footnotes omitted). *Friedman v. Dozorc,* 412 Mich. 1, 24 (1981). See also *Norton v. Hines,* 49 Cal. App. 3d 917, 923 (1975). Furthermore, these courts emphasize that the nature of the adversary system precludes an adverse party from relying on his opposing party's attorney. See *Bickel v. Mackie,* 447 F. Supp. 1376, 1381 (N.D. Iowa), aff'd, 590 F.2d 341 (8th Cir. 1978). This absence of foreseeable reliance, according to the courts, is another reason for denying an adverse party a cause of action based on negligence. See *Friedman v. Dozorc, supra* at 28. We agree with the reasoning in these cases. Hence, we hold that an attorney should not be held liable to his client's adversary for the consequence of his professional negligence.

---

[12] See, e.g., *Bickel v. Mackie,* 447 F. Supp. 1376, 1381 (N.D. Iowa), aff'd, 590 F.2d 341 (8th Cir. 1978); *Bird v. Rothman,* 128 Ariz. 599, 601, cert. denied, 454 U.S. 865 (1981); *Lewis v. Swenson,* 126 Ariz. 561, 563-565 (1980); *Rowell v. Transpacific Life Ins. Co.,* 94 Cal. App. 3d 818, 821 (1979); *Parnell v. Smart,* 66 Cal. App. 3d 833, 838 (1977); *Norton v. Hines,* 49 Cal. App. 3d 917, 921 (1975); *Stopka v. Lesser,* 82 Ill. App. 3d 323, 326 (1980); *Lyddon v. Shaw,* 56 Ill. App. 3d 815, 822 (1978); *Brody v. Ruby,* 267 N.W.2d 902, 906 (Iowa 1978); *Young v. Hecht,* 3 Kan. App. 510, 515 (1979); *Hill v. Willmott,* 561 S.W.2d 331, 334-335 (Ky. App. 1978); *Spencer v. Burglass,* 337 So. 2d 596, 600-601 (La. App. 1976); *Friedman v. Dozorc,* 412 Mich. 1, 20-30 (1981); *Gasis v. Schwartz,* 80 Mich. App. 600, 602-603 (1978); *Drago v. Buonagurio,* 46 N.Y.2d 778, 779-780 (1978); *O'Toole v. Franklin,* 279 Or. 513, 523-524 (1977); *Martin v. Trevino,* 578 S.W.2d 763, 770-772 (Tex. App. 1978); *Ayyildiz v. Kidd,* 220 Va. 1080, 1086 (1980). See generally R.E. Mallen & V.B. Levit, *supra* § 554, at 680-681.

We also reject the Beecys' final contention that their claim under G. L. c. 93A, § 9, should not have been dismissed. At the time of the alleged wrongful conduct in this case, G. L. c. 93A, § 9 (1), required a purchase or sale of goods or services. The 1979 amendment to G. L. c. 93A, § 9 (1) (St. 1979, c. 406, § 1), that abolished the purchase or sale requirement does not apply to cases, such as this one, where the alleged cause of action arose prior to the effective date of the 1979 amendment. *Murphy* v. *Charlestown Sav. Bank*, 380 Mass. 738, 743 (1980). The Beecys did not purchase any goods or services from Mr. Pucciarelli. The Beecys argue, however, that the purchase or sale requirement is satisfied because they purchased goods from Filene's and held a charge account at Filene's, and because they never would have been sued by Mr. Pucciarelli had they not been customers of Filene's. The Beecys rely upon *Mongeau* v. *Boutelle*, 10 Mass. App. Ct. 246 (1980), where the Appeals Court appears to have assumed that one who purchases real estate in reliance on representations of a broker who is representing the seller will be deemed to have purchased goods from the broker as well as the seller. See *id.* at 248-249. The *Mongeau* case does not apply here because the purchaser in *Mongeau* did in fact deal with the broker and because the allegedly unfair behavior arose in the course of these dealings. In this case, however, Mr. Pucciarelli did not deal directly with the Beecys in a purchase or sale of goods or services, nor did the allegedly unfair behavior occur during a purchase or sale of goods or services. Since we uphold the dismissal of the Beecys' G. L. c. 93A claim on the ground that there was no purchase or sale, we need not address any other issues raised with regard to this cause of action. The judgment dismissing the plaintiffs' complaint is affirmed.

*So ordered.*