**Francois GOUIN, Jr., Plaintiff,**

v.

**Dori C. GOUIN, Esq., in her professional and individual capacities, Todd D. Posey, William R. Toner, in his official and individual capacities, Edward McMahon, in his official and individual capacities, City of Boston, John Does, Jane Doe, Defendants.**

**No. CIV.A.2001–10890–RBC[1].**

United States District Court, D. Massachusetts.

March 11, 2003.

1. In early December, 2001, with the parties' consent, this case was referred and reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

64

Barbara C. Johnson, Andover, MA, for Plaintiff.

Dori C. Gouin, Cumberland, ME, Todd D. Posey, Waltham, MA, Dori F. Chadbourne, Chadbourne Law Offices, Portland, MA, Eve Anne Piemonte–Stacey, Asst. Corp. Counsel, City of Boston Law Dept., Boston, MA, for Defendants.

### MEMORANDUM AND ORDER ON TWO MOTIONS TWO DISMISS # 64 & # 68

COLLINGS, United States Magistrate Judge.

### I. Introduction

On May 24, 2001, plaintiff Francois Gouin, Jr. ("Gouin") commenced the present action with the filing of a fifteen count complaint against defendants Dori C. Gouin, Esquire ("Dori"), in her professional and individual capacities, Todd D. Posey ("Posey"), William R. Toner ("Toner"), in his official and individual capacities, Edward McMahon ("McMahon"), in his official and individual capacities, the City of Boston, Paul F. Evans ("Evans"), Police Commissioner of the City of Boston, in his official and individual capacities, John Does and Jane Doe. The plaintiff's claims arise out of events which transpired in the early morning hours of January 5, 2001, when Gouin was arrested after he attempted to gain entrance to a certain condominium in Boston that he owned with Dori as tenants by the entirety.

In response to Gouin's complaint, each of the defendants filed motions to dismiss, jointly or singly. On March 21, 2002, a Memorandum and Order (# 46) entered granting in part, and denying in part, the defendants' respective motions. Specifically, the Order dismissed defendant Evans from the case, and all claims against the City of Boston were dismissed except

for the claims of refusal to train or neglect to train, supervise, and discipline police officers, negligence, and negligent infliction of emotional distress. Moreover, as against defendants Toner and McMahon, the claims of negligence and negligent infliction of emotional distress were dismissed. Finally, none of the claims against defendants Dori and Posey were dismissed.

Thereafter defendants Dori, Posey, Toner, and McMahon individually submitted answers and counterclaims to Gouin's complaint. In particular, defendants McMahon and Toner filed separate answers and counterclaims on April 22, 2002 (# 50, # 51) while defendants Posey and Dori each filed separate answers and counterclaims on May 6, 2002 (# 58, # 59). In addition to answering the counterclaims, on August 5, 2002 Gouin filed a motion to dismiss Toner and McMahon's counterclaims (# 64) and on the following day he filed a motion to dismiss or, in the alternative, for summary judgment, on both Dori's and Posey's counterclaims (# 68).[2] All of the defendants have submitted memoranda of law in opposition to Gouin's motions to dismiss, with Toner and McMahon filing jointly on August 19, 2002(# 75), and Dori and Posey filing jointly on October 11, 2002(# 77).

With the record complete, the two motions to dismiss are in a posture for resolution.

## II. The Standard

Like the defendants before him in their respective motions to dismiss the complaint, in large measure the plaintiff appears to misapprehend the nature of a Rule 12(b)(6) motion. That Gouin's version of the facts and circumstances underlying the claims asserted in the counterclaims differs from the allegations of Dori, Posey, Toner and McMahon quite simply does not subject those claims to dismissal.

The standard to be applied when deciding the motions to dismiss the counterclaims under Rule 12(b)(6), Fed.R.Civ.P., is the same as was previously applied in ruling on the motions to dismiss the complaint. The Supreme Court's landmark decision in *Conley v. Gibson* more than forty years ago provided the rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the [non-moving party] can prove no set of facts in support of [his] claim that would entitle [him] to relief." *Conley*, 355 U.S. 41, 45-6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). *See also Gorski v. N.H. Dept. of Corrections*, 290 F.3d 466, 473 (1 Cir., 2002). It is incumbent upon the court to "accept the complaint's allegations as true, indulging all reasonable inferences in favor of [the non-moving party]." *Kiely v. Raytheon Co.*, 105 F.3d 734, 735 (1 Cir., 1997); *Hogan v. Eastern Enterprises/Boston Gas*, 165 F.Supp.2d 55, 57 (D.Mass.2001). That general proposition notwithstanding, "bald assertions, ... subjective characterizations, optimistic predictions, or problematic suppositions" need not be credited. *United States v. AVX Corp.*, 962 F.2d 108, 115 (1 Cir., 1992) (internal quotations omitted).

## III. The Facts

The events underlying the myriad of claims at hand in this litigation have been

---

**2.** A motion to dismiss under Rule 12(b)(6) may, under certain circumstances, be converted to a motion for summary judgment. The Rule allows that "[i]f...matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." See Fed.R.Civ.P. 12(b). Given the complexity of this litigation and the number of issues to be considered, this is not a case that lends itself to such a conversion. Consequently, extraneous matter appended to Gouin's motion shall not be considered.

recounted at length in the earlier Memorandum (# 46), and so shall not be reiterated herein. However, additional facts relevant to the counterclaims and current motions to dismiss warrant mention. As is the rule, the facts are recited in a light most favorable to the non-moving parties, in this instance the defendants Dori, Posey, McMahon and Toner.

Defendant Posey lived in the condominium at 58 Temple Street owned jointly by both Dori and Gouin since December 10, 2000 with Dori's approval. (# 58 ¶¶ 4–8) Upon returning home from work on the evening of January 3, 2001, Posey could not enter the condo because someone had changed the locks. (# 58 ¶ 9) He notified Dori that the locks had been changed and that he could not get into the premises at 58 Temple Street. (# 58 ¶ 10) Dori obtained access to the condominium the following day and changed the lock again. (# 58 ¶¶ 11–12)

An inspection of the premises by Dori and Posey revealed that Posey's messages had been erased from his answering machine, a new lock had been placed on the basement storage unit, and that some of Posey's papers had been disturbed. (# 58 ¶ 11) Suspecting Gouin's involvement, Dori sought and was granted another chapter 209A restraining order that in part forbade Gouin from entering into the Temple Street condominium. (# 59 ¶¶ 20–24) The January 4, 2001 TRO was not served on Gouin, however, until after the events giving rise to his claims in his complaint. (# 59 ¶ 24)

On January 5, 2001, Gouin attempted to gain entry into the condominium by drilling through the lock. (# 58 ¶ 19) On this occasion, however, Posey was at home and so went downstairs and opened the door to find Gouin. (# 58 ¶ 21) Posey informed Gouin that another TRO had been granted against him and that he was going to call

the police. (# 58 ¶¶ 22–23) According to Posey, at that time Gouin took out a handheld tape recorder and began "waving the recorder in Mr. Posey's face" and claimed the he was moving back into the Temple Street unit. (# 58 ¶ 22) Posey then called the police. (# 58 ¶ 25)

While waiting for the police to respond, Posey contends that Gouin threatened him by saying "You have ten minutes to put your clothes on and to leave my residence," (# 58 ¶ 24) and that Gouin entered the unit "muttering to himself angrily and waiving the recorder around at Mr. Posey." (# 58 ¶ 25) Gouin remained in the unit until the police arrived. (# 58 ¶ 30) In the meantime, Posey had also called Dori to inform her of the situation. (# 58 ¶ 29) Dori advised Posey again to remind Gouin about the TRO. (# 58 ¶ 29) Gouin was arrested by officers McMahon and Toner shortly after their arrival on the scene, and they escorted him from the premises. (# 58 ¶ 31) All the charges against Gouin were eventually dismissed, however. (# 59 ¶ 24)

On October 24, 2001, Gouin filed the first of three applications for a criminal complaint against both Dori and Posey (# 59 ¶ 27), requesting that both be charged with reporting a false crime that led to his arrest on January 5, 2001 and that Posey be charged individually with aiding and abetting. (# 59 ¶ 27) Prior to disposition of that application, Gouin and his attorney visited Dori's divorce counsel at her office and offered to drop the application in exchange for Dori granting legal custody of their children to Gouin. (# 59 ¶ 30) Dori's attorney denied this request and Gouin proceeded with his criminal application. On December 21, 2001, Gouin's application was denied by a clerk magistrate of the Boston Municipal Court for lack of probable cause. (# 59 ¶ 34)

Gouin's second criminal complaint application was filed against Dori for larceny on December 28, 2001, alleging that she had illegally removed money from an escrow fund established in connection with the divorce action. (# 59 ¶ 35) Gouin was granted an evidentiary hearing, but ultimately his application was denied on January 24, 2002. (# 59 ¶ 37) Gouin appealed both of these denials and was granted a full evidentiary hearing, but again the applications were denied for lack of probable cause on January 29, 2002. (# 59 ¶¶ 38, 39, 40)

Gouin subsequently filed a third application for criminal complaint against Dori for larceny and received a hearing on February 15, 2002. (# 59 ¶ 42) The basis for that complaint was that Dori had illegally filed out a change of address card when she moved to Maine in the summer of 2000. This third application was denied as well for lack of probable cause. (# 59 ¶ 43)

### IV. The Claims

Defendant Dori incorporates six claims in her counterclaim against Gouin. In Count I she alleges assault, in Count II abuse of process, in Count III malicious prosecution, in Count IV intentional infliction of emotional distress, in Count V negligent infliction of emotional distress, and in Count VI intentional interference with contractual or advantageous business relations. Similarly defendant Posey sets forth six claims in his counterclaim against Gouin. In Count I he alleges assault, in Count II conversion, in Count III abuse of process, in Count IV malicious prosecution, in Count V intentional infliction of emo-

tional distress, and in Count VI negligent infliction of emotional distress.

Defendants Toner and McMahon both have filed the same claim against Gouin, that being a claim for violation of chapter 272, section 99 of the Massachusetts General Laws, Interception of Wire and Oral Communications.

### V. The Motions

### A. The Counterclaims of Defendant Dori

#### 1. Count I: Assault [3]

At common law assault is defined as "an attempt to use physical force, or as a threat of use of physical force." *Commonwealth v. Gorassi,* 432 Mass. 244, 248, 733 N.E.2d 106, 110 (2000). There are two types of assault: the attempted battery type of assault, and the threatened battery type of assault. In regard to the second kind of assault, the claimant has the burden of proving that the actor "engaged in 'objectively menacing' conduct with the intent to put the victim in fear of immediate bodily harm." *Gorassi,* 432 Mass. at 248, 733 N.E.2d at 110 (quoting *Commonwealth v. Musgrave,* 38 Mass.App.Ct. 519, 524 n. 7, 649 N.E.2d 784, 787 n. 7 (1995)). Moreover, the Supreme Judicial Court has endorsed the formulation set forth in the Restatement (Second) of Torts at least with respect to the effect of words alone: " 'Words do not make the actor liable for assault unless together with other acts or circumstances they put the other in reasonable apprehension of an imminent harmful or offensive contact with his person.' " *Commonwealth v. Delgado,* 367 Mass. 432, 326 N.E.2d 716 (1975) (quoting

---

**3.** It should be noted that although defendant Dori's counterclaim for assault does not arise out of the transaction or occurrence that is the subject matter of the plaintiff's claims, it is still allowed as a permissive counterclaim under the Federal Rules of Civil Procedure.

See Fed.R.Civ.P. 13(b) ("A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.").

Restatement (Second) of Torts § 31). Comment b of § 31 of the Restatement further clarifies this element by explaining that "words which accompany or precede acts known to the other and understood by him may be decisive evidence of the actor's intention to commit the assault and of the other's apprehension." Restatement (Second) of Torts § 31, com. b. Thus, threatening words accompanied by objectively menacing gestures which create an imminent apprehension of harmful contact may be sufficient under Massachusetts law to constitute the tort of assault.

In the present action, defendant Dori alleges that Gouin assaulted her during an altercation on November 7, 1999.[4] During this altercation involving a dispute over their son, Dori alleges that Gouin told her: "You can either do it my way or I can beat you half to death..." (# 59 ¶ 16) Dori claims that this threat combined with Gouin's conduct during the altercation instilled in her fear of imminent harm, and that Gouin knowingly acted as he did in order to instill fear in her so that she would comply with his wishes. (# 59 ¶¶ 55, 56) These allegations are sufficient to state a claim for assault.

### 2. Count II: Abuse of Process

Under Massachusetts law, in order to state a claim for abuse of process three elements must be satisfied. First, the claimant must allege that some process was used. Second, the claimant must allege that the process was used for an ulterior or illegitimate purpose. Third, the claimant must allege that the use of the process resulted in damages. *Gutierrez v. Mass. Bay Transportation Authority*, 437 Mass. 396, 407, 772 N.E.2d 552, 563 (2002). *See also Kelley v. Stop & Shop*

*Cos.*, 26 Mass.App.Ct. 557, 558, 530 N.E.2d 190 (1988) (quoting *Datacomm Interface, Inc. v. Computerworld, Inc.*, 396 Mass. 760, 775–776, 489 N.E.2d 185 (1986) (The essential elements of the tort of abuse of process are "(1) 'process' was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage.")). Furthermore, it is well established that an abuse of process claim cannot be defeated merely because the initiator of the process had probable cause. As the Supreme Judicial Court of Massachusetts has stated, it is " '[t]he subsequent misuse of the process, though properly obtained, [which] constitutes the misconduct for which the liability is imposed.' " *Quaranto v. Silverman*, 345 Mass. 423, 426, 187 N.E.2d 859, 861 (1963) (quoting Restatement (Second) of Torts § 682, com. a). A typically cited example of abuse of process is extortion, but any process used "to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it..." may qualify. *Stromberg v. Costello*, 456 F.Supp. 848, 850 (D.Mass. 1978) (quoting Restatement (Second) of Torts § 682, com. b).

Here it is clear that some form of process was used by Gouin given that he filed three separate criminal applications against Dori, as well as having commenced several civil actions. (# 59 ¶¶ 27–43) Dori contends that these actions were initiated because of ulterior motives: "harassment and intimidation," (# 59 ¶ 44) and to force her to "turn over the kids." (# 59 ¶ 30) Finally, she alleges that she suffered damages as a result of the initiation of the actions. In particular, she claims to have been fired from her job as a result of the

---

4. Filed on May 6, 2002, Dori's claim of assault is not barred by the three year statute of limitations for tort actions in Massachusetts which starts to run when the cause of action accrues. See Mass. Gen. Laws c. 260, § 2A.

number of legal actions brought against her by Gouin. (# 59 ¶ 52)

All of the elements of an abuse of process claim have been sufficiently alleged. Gouin's motion to dismiss for failure to state a claim in regard to Count II of Dori's counterclaim is therefore denied.

### 3. Count III: Malicious Prosecution

■ Dori contends that Gouin maliciously prosecuted her by filing three separate criminal applications against her. Under Massachusetts law, three elements must be alleged to establish such a claim: 1) the action was prosecuted with malice; 2) the action was commenced without probable cause; and 3) the action was terminated in favor of the accused.[5] *Gutierrez*, 437 Mass. at 405, 772 N.E.2d at 561. *See also Nieves v. McSweeney*, 241 F.3d 46, 53 (1 Cir., 2001) (citing *Correllas v. Viveiros*, 410 Mass. 314, 572 N.E.2d 7, 10 (1991)(The elements of a claim for malicious prosecution are "(1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendant; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice.")); *Calero–Colon v. Betancourt–Lebron*, 68 F.3d 1, 3 at n. 5 (1st Cir.1995).

■ The malice element of malicious prosecution requires that the accuser knew there was no probable cause for the commencement of the action, and that the accuser acted with an improper motive. *Beecy v. Pucciarelli*, 387 Mass. 589, 593, 441 N.E.2d 1035, 1039 (1982). The SJC emphasized in Beecy that the malice required to meet the standard "is not necessarily revenge or other base and malignant passion. Whatever is done wilfully and purposely, if it be at the same time wrong and unlawful, and that known to the [accuser], is in legal contemplation malicious." *Beecy*, 387 Mass. at 594 n. 9, 441 N.E.2d at 1038 n. 9 (quoting *Wills v. Noyes*, 29 Mass. 324, 12 Pick. 324, 327–328 (1832)). Furthermore, the improper purpose prong may include conduct such as "vexation, harassment, [or] annoyance . . ." *Beecy*, 387 Mass. at 594 n. 9, 441 N.E.2d at 1039 n. 9 (quoting *Wills v. Noyes*, 29 Mass. 324, 12 Pick. 324, 327–28 (1832)). Improper purpose has also been characterized as "using court proceedings to gain a private advantage, because of hostility and ill will, and without belief by the accuser in the guilt of the accused." *Conway v. Smerling*, 37 Mass.App.Ct. 1, 3, 635 N.E.2d 268, 271 (1994).

■ The probable cause element is judged by an objective standard. In other words, it is " 'such a state of facts in the mind of the [accuser] as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion' that the [accused] had committed a crime.' " *Carroll v. Gillespie*, 14 Mass.App.Ct. 12, 19, 436 N.E.2d 431, 435 (1982) (quoting *Lincoln v. Shea*, 361 Mass. 1, 4–5, 277 N.E.2d 699 (1972)). Furthermore, probable cause in the context of a tort claim for malicious prosecution is determined at the time the application for a criminal complaint was made, rather than later when the true facts may have become known to the accuser. *Carroll*, 14 Mass. App.Ct. at 19, 436 N.E.2d at 436.

---

**5.** Although the SJC in *Beecy v. Pucciarelli*, 387 Mass. 589, 441 N.E.2d 1035 (1982), described an additional element of damages as a result of the prosecution, more recent case law concerning this claim has failed to address this fourth element. See *Gutierrez*, 437 Mass. 396, 772 N.E.2d 552 (2002) (citing Beecy). To the extent that there is some question on this point, the Court need not decide the issue as Dori has alleged damages resulting from the alleged malicious prosecution.

The lack of probable cause requirement may also be met by showing that the accuser did not base his application for a criminal complaint on information which should have been reasonably relied upon in terms of its quality, quantity, and the availability of other, perhaps more reliable information. *Carroll*, 14 Mass.App.Ct. at 19–20, 436 N.E.2d at 436. Massachusetts law imposes a duty on the accuser to determine if there is " 'reasonable and probable cause for a prosecution.' " *Carroll*, 14 Mass.App.Ct. at 21, 436 N.E.2d at 436. Whether the accuser should have reasonably relied upon the information he did in initiating the criminal proceedings against the accused is, of course, weighed on a case-by-case basis. In some instances, an accuser will be relieved of " 'the obligation of sifting and evaluating other possibly exculpatory evidence' regarding the crime of which the [accused] is suspected." *Carroll*, 14 Mass. App.Ct. at 20, 436 N.E.2d at 436 (quoting *Seelig v. Harvard Coop. Soc.*, 355 Mass. 532, 246 N.E.2d 642 (1969)). In other circumstances Massachusetts courts have found lack of probable cause if the information on which the accuser initiates the criminal complaint was "sufficiently unreliable or incomplete to support a finding that it was unreasonable to rely upon it without additional information." *Carroll*, 14 Mass.App.Ct. at 20, 436 N.E.2d at 436. In any event, these are all issues of fact to be fleshed out in discovery.

Lastly with regard to the third element of the claim, the Supreme Judicial Court has held that an accused must not endure a full trial and acquittal in order successfully to allege malicious prosecution. *Wynne v. Rosen*, 391 Mass. 797, 464 N.E.2d 1348 (1984) (abandoning the rule of *Bacon v. Towne*, 58 Mass. 217, 4 Cush. 217 (1849) and holding that a criminal prosecution need not proceed through trial for a plaintiff to bring an action of malicious prosecution against his accuser). In adopting this rule, Massachusetts has endorsed the Restatement (Second) of Torts which states: "Criminal proceedings are terminated in favor of the accused by [a] discharge by a magistrate at a preliminary hearing." Restatement (Second) of Torts, § 659. Accordingly, the denial of a criminal complaint for lack of probable cause at a formal hearing satisfies a claimant's burden of proving successful termination.

Dori refers to three actions initiated against her by Gouin in support of her malicious prosecution claim: a criminal action for filing a false report in connection with the event on October 24, 2002 leading to this lawsuit and ending in denial for lack of probable cause on December 21, 2001 (# 59 ¶ 27); a second criminal action for larceny that Gouin filed on December 28, 2001 that was also denied for lack of probable cause on January 29, 2002 (# 59 ¶ 35); and finally a criminal action for larceny filed at an unknown date and also denied for lack of probable cause on February 15, 2002. (# 59 ¶ 41) Additionally, she includes Gouin's failed appeals. (# 59 ¶¶ 38, 42)

It is plain that Dori has adequately alleged facts to survive Gouin's 12(b)(6) motion. Whether Gouin acted with malice is a question of fact. Dori's counterclaim sets forth allegations which could reasonable be found to show that Gouin lacked probable cause in all of his applications. She also alleges improper purpose, in that Gouin offered to cease pursuit of the complaint if she would "relinquish custody of the children" (# 59 ¶ 44)

Dori's allegations also raise issues of fact as to whether it was reasonable under the circumstances for Gouin " 'to believe or entertain an honest and strong suspicion' that the [accused] had committed a crime." *Carroll*, 14 Mass.App.Ct. at 19, 436 N.E.2d at 435. In regard to Gouin's first applica-

tion for larceny, Dori alleges that "the issue had already been heard many times over in connection with the divorce action itself," (# 59 ¶ 36), thus raising the issue of whether Gouin was reasonable in believing a crime had been committed.

Finally, all prosecutions against Dori ended in termination in her favor. As a complete trial on the merits is not required to satisfy a malicious prosecution claim, and all complaints were denied in favor of Dori for lack of probable cause in hearings by an officer of the court, it can be concluded that the third element of malicious prosecution has been successfully alleged.

Based on this discussion, Gouin's motion to dismiss for failure to state a claim in regard to Count III of Dori's counterclaim is denied.

### 4. Count IV: Intentional Infliction of Emotional Distress

■ The elements of the tort of intentional infliction of emotional distress are well settled in Massachusetts. A properly pled claim alleges:

(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and 'was utterly intolerable in a civilized community;' (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was 'severe' and of a nature 'that no reasonable man could be expected to endure it.'

*Agis v. Howard Johnson Co.*, 371 Mass. 140, 144–45, 355 N.E.2d 315, 318–19 (1976) (internal citation omitted). *See also Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1 Cir.,

1996); *Tetrault v. Mahoney, Hawkes & Goldings,* 425 Mass. 456, 466, 681 N.E.2d 1189, 1197 (1997); *Payton v. Abbott Labs,* 386 Mass. 540, 555, 437 N.E.2d 171 (1982).

Furthermore, the actor's conduct must be more than:

" 'mere insults, indignities, threats, annoyances, petty oppressions or other trivialities' nor even is it enough 'that the defendant has acted with an intent which is tortuous or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice" or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.' "

*Tetrault,* 425 Mass. at 466, 681 N.E.2d at 1197 (quoting *Foley v. Polaroid Corp.,* 400 Mass. 82, 99, 508 N.E.2d 72 (1987)).

■ It should also be noted, however, that the actor's extreme and outrageous conduct may be found in the totality of the circumstances, and does not have to be alleged in a single incident. *See Boyle v. Wenk,* 378 Mass. 592, 595, 392 N.E.2d 1053, 1055–56 (1979).

■ Applying this standard to Count IV of defendant Dori's counterclaim, it is clear that she has carried her burden in alleging a claim for intentional infliction of emotional distress. Dori cites to six separate incidents in which she claims Gouin knew or should have known that his conduct would have caused her emotional distress. (# 59 ¶ 67) Furthermore, she alleges that viewed in the totality of the circumstances, these actions were extreme and outrageous, that Gouin's actions were the cause of Dori's emotional distress, and that the resulting emotional distress was severe.[6] All of the necessary elements of the

---

**6.** Dori asserts that she suffered physical injuries as a result of Gouin's conduct. (# 59 ¶ 70)

Although it does not affect the disposition of this motion, it should be noted that Massachu-

tort of intentional infliction of emotional distress are present; Gouin's motion to dismiss for failure to state a claim with respect to Count IV of Dori's counterclaim is denied.

### 5. Count V: Negligent Infliction of Emotional Distress

■ Massachusetts has long recognized the claim of negligent infliction of emotional distress. To plead this tort, a plaintiff must allege that (1) the defendant was negligent; (2) that she suffered emotional distress as a result of the defendant's negligence; (3) the emotional distress was caused by the defendant's negligence; (4) the plaintiff suffered physical harm manifested by objective symptomatology; and (5) a reasonable person would have suffered emotional distress under the same circumstances. See *Payton*, 386 Mass. at 557, 437 N.E.2d at 181. Since Payton, Massachusetts courts have broadened the scope of "objective symptomatology," now mandating that "plaintiffs must corroborate their mental distress claims with enough objective evidence of harm to convince a judge that their claims present a sufficient likelihood of genuineness to go to trial." *Sullivan v. Boston Gas Co.*, 414 Mass. 129, 137–38, 605 N.E.2d 805, 810 (1993). Thus, the physical harm requirement has not been eliminated from negligent infliction of emotional distress, but merely "expanded the range of symptoms that may provide the type of objective evidence to prove physical harm to include symptoms that could be classified as more 'mental' than 'physical.'" *Gutierrez*, 437 Mass. at 412, 772 N.E.2d at 566. Moreover, the SJC has explained that a "successful negligent infliction of emotional distress

claim...must do more than allege 'mere upset, dismay, humiliation, grief and anger.'" *Sullivan*, 414 Mass. at 137, 605 N.E.2d at 809–10 (quoting *Corso v. Merrill*, 119 N.H. 647, 653, 406 A.2d 300 (1979)).

■ In her counterclaim, Dori contends that Gouin was negligent (# 59 ¶ 73), that his negligence resulted in her emotional distress (# 59 ¶ 73), that the emotional distress she suffered manifested itself through a number of symptoms (# 59 ¶ 73), and that a reasonable person would have also suffered emotional distress under the same circumstances (# 59 ¶ 73). The threshold pleading requirements are clearly met. Gouin's motion to dismiss Count V is without merit.

### 6. Count VI: Intentional Interference with Contractual or Advantageous Business Relations

Count VI of Dori's counterclaim actually combines two separate common law claims: intentional interference with contractual relations and intentional interference with advantageous business relations. See Nolan & Sartorio, Tort Law (Second) §§ 97–98 (1989). Although the torts are similar, the distinction is important as the elements of each differ slightly.

The Restatement (Second) of Torts represents the law of Massachusetts with regard to a claim of intentional interference with contractual relations. *Shafir v. Steele*, 431 Mass. 365, 369 n. 7, 727 N.E.2d 1140, 1143 n. 7 (2000). That rule states:

One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing

setts eliminated the requirement of bodily harm resulting from intentional infliction of emotional distress as an element of the claim.

See *Agis*, 371 Mass. at 144, 355 N.E.2d at 318.

the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him.

Restatement (Second) of Torts § 766A.[7]

■ Thus, in order to state a claim, Dori must allege four elements: "(1) the existence of a contract or a business relationship with contemplated economic benefit; (2) the defendant's knowledge of the contract or business relationship; (3) the defendant's intentional interference with the contract or business relationship for an improper purpose or by improper means; and (4) damages." *Swanset Development Corp. v. City of Taunton,* 423 Mass. 390, 397, 668 N.E.2d 333, 339 (1996).

■ Although similar, the tort of intentional interference with an advantageous business relationship must be distinguished. Properly pleading intentional interference with advantageous relationship requires a showing of four elements: (1) the plaintiff was involved in a business relationship or anticipated involvement in one; (2) the defendant knew about the relationship; (3) the defendant intentionally and purposefully interfered with the relationship; and (4) the plaintiff suffered damage as a result. *Comey v. Hill,* 387 Mass. 11, 438 N.E.2d 811 (1982). This reflects a reformulation by the SJC when it held that "malice" was not an element of the tort, and replaced the term with "improper" as used in the Restatement (Second) of Torts. *See United Truck Leasing Corp. v. Geltman,* 406 Mass. 811, 815–16, 551 N.E.2d 20, 23 (1990). Thus, the notable difference between this tort and that of intentional interference with contractual relations is the existence of a contract.

■ In Count VI Dori contends that Gouin intentionally interfered with her contractual relationship with co-defendant Posey, with whom she claims to have had a contractual relationship in regard to Posey's use of the condominium. Although Dori asserts that a contractual relationship existed, that Gouin's actions intentionally and improperly interfered with the relationship, and that damage resulted, she fails to allege that Gouin had any knowledge of the contract between herself and Posey. The tortfeasor's knowledge of the contract being an essential element of the tort, Dori has thus failed to state a claim of intentional interference with contractual relationship.

■ Dori's claim of intentional interference with advantageous business relations, however, survives Gouin's motion to dismiss. Dori alleges that she had an advantageous business relationship with her employer, that Gouin knew of the relationship, that he intentionally and improperly interfered with the relationship by "bringing frivolous actions against Ms. Gouin [Dori]" (# 59 ¶ 82), and that she was terminated from her employment as a result of Gouin's actions. Gouin's motion to dismiss for failure to state a claim in regard to the intentional interference with advantageous business relations of Count VI of Dori's counterclaim is unavailing.

### B. The Counterclaims of Defendant Todd Posey

#### 1. Count I: Assault

■ The elements of assault under Massachusetts law have been reviewed in Part V.A.1. of this memorandum and are fully applicable to Posey's claim of assault. It should be emphasized, however, that

---

7. The rule stated in § 766A is be distinguished from the rule in § 766, which involved interference causing the third party not to perform. See *Shafir,* 431 Mass. at 369, 727 N.E.2d at 1144.

although words alone are insufficient to constitute an assault, a conditional threat accompanied by some physical act which could reasonable be interpreted as threatening imminent physical contact may. *Commonwealth v. Delgado,* 367 Mass. 432, 437, 326 N.E.2d 716, 719 (1975). See also Restatement (Second) of Torts § 31.

Posey claims that during the events of January 5, 2001 at the Temple Street condo, Gouin assaulted him. He alleges that he construed Gouin's comment to him that "You have ten minutes to put your clothes on and to leave my residence," (# 58 ¶ 24) to be a threat. (# 58 ¶ 44) Combined with Gouin's behavior while inside the condominium, which he describes as "stalking" and "glaring," (# 58 ¶ 46) Posey asserts that he was put in apprehension of an imminent physical harm. These allegations readily meet the pleading requirements for an assault.

### 2. Count II: Conversion

■■■ To state a claim for conversion, a claimant must allege that the opposing party intentionally or wrongfully exercised dominion and control over the claimant's personal property to which he did not have a right to possession at that time. *Abington National Bank v. Ashwood Homes, Inc.,* 19 Mass.App.Ct. 503, 475 N.E.2d 1230 (1985). *See also Third National Bank of Hampden County v. Continental Insurance Company,* 388 Mass. 240, 244, 446 N.E.2d 380, 383 (1983). The Supreme Judicial Court has also endorsed the Restatement (Second) of Torts which defines conversion as "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Restatement (Second) of Torts § 222A. See also *Third National Bank of Hampden County,* 388 Mass. at 244, 446 N.E.2d at 383.

■■■ In Count II of his counterclaim, Posey alleges that Gouin took a contract that he knew belonged to Posey from the condominium at 58 Temple Street, and exercised control over it by using it as an exhibit in the divorce action against Dori, and so depriving Posey of the use of the contract. These allegations are sufficient to state a claim of conversion. Whether Gouin's conduct constituted a serious interference with the rights of Posey is a factual matter not to be decided in the context of a motion to dismiss.

### 3. Count III: Abuse of Process

Count III of Posey's counterclaim is a claim of abuse of process by Gouin. Reference is made to the lengthy discussion of the elements of this tort in Part V.A.2. hereinabove. In support of this claim, Posey alleges that Gouin's October 24, 2001 application for a criminal complaint against him for reporting a false crime and aiding and abetting was done for the purpose of intimidating him from testifying in the divorce action between Gouin and Dori, and to gain some strategic advantage in the custody of their children. (# 58 ¶ 57) Additionally, he claims to have suffered damages as a result. At this juncture it does not appear beyond doubt that Posey cannot prove a set of facts necessary to support his claim at trial and thus his claim of abuse of process survives.

### 4. Count IV: Malicious Prosecution

■■■ The tort of malicious prosecution was analyzed in Part V.A.3. of this memorandum and that discussion need not be repeated. Posey premises his claim of malicious prosecution on Gouin's October 24, 2001 application for a criminal complaint against him for reporting a false crime and aiding and abetting which was subsequently denied for lack of probable cause on December 21, 2001.

Posey alleges that Gouin lacked probable cause in filing an application, and in doing so had an improper purpose, thereby satisfying both the malice and probable cause elements of the tort. The action terminated in Posey's favor with a dismissal for lack of probable cause. Accordingly, Posey has successfully alleged the elements of malicious prosecution and Gouin's motion to dismiss Count IV of Posey's counterclaim is denied.

### 5. Count V: Intentional Infliction of Emotional Distress

■■■ The elements of this tort, too, have already been discussed (see Part V.A.4.) and will be reviewed here only to explain the nature of "extreme and outrageous conduct" necessary to satisfy that element of the tort. Although the standard of sufficiency in Massachusetts is fairly liberal, there certainly exists a threshold level which a claimant must reach in order to plead extreme and outrageous conduct, to wit, if "reasonable people could differ on whether the conduct is extreme and outrageous." *Boyle*, 378 Mass. at 597, 392 N.E.2d at 1056–57. If the answer to this proposition is yes, then the issue must go to the trier of fact.

The Restatement (Second) of Torts, which Massachusetts follows in its formulation of the tort, describes "extreme and outrageous" as a "case...in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!' " Restatement (Second) of Torts § 46, com. d. A brief review of cases in which Massachusetts courts have found, as a matter of law, the conduct to be extreme and outrageous, will also aid in the inquiry. In Agis, the leading case, the plaintiff was a waitress at a restaurant. After a series of thefts at the restaurant, the manager called the staff in for questioning. When no one took responsibility,

the manager announced he would begin firing the waitresses in alphabetical order until someone confessed. After no one came forward, the manager fired Agis. The SJC concluded that the plaintiff did in fact state a cause of action and that a reasonable jury could have found that the manager's conduct was extreme and outrageous. *Agis*, 371 Mass. at 145, 355 N.E.2d at 319.

In Boyle, the SJC also permitted the plaintiff's claim to go forward based on allegations that the defendant, a private investigator, repeatedly called and harassed the plaintiff during an investigation of her brother-in-law, despite the fact that the defendant knew she was recovering from being hospitalized. *Boyle*, 378 Mass. at 594–95, 392 N.E.2d at 1054–55. The defendant had called the plaintiff repeatedly in the early morning asking her questions, and had also claimed to have been in prison for rape in the plaintiff's presence as well as falsely identifying himself as a police officer. *Boyle*, 378 Mass. at 594–95, 392 N.E.2d at 1054–55.

In another case the SJC found that the defendant's failure to respond to the plaintiff's complaints of a recurring flood of raw sewage in her apartment constituted extreme and outrageous behavior sufficient to satisfy the pleading requirement. *Simon v. Solomon*, 385 Mass. 91, 431 N.E.2d 556 (1982). Finally, in *George v. Jordan Marsh & Co.*, 359 Mass. 244, 268 N.E.2d 915 (1971), the SJC determined that the repeated and malicious threats and harassing telephone calls to the mother of a debtor by the creditor were sufficient to state a claim for intentional infliction of emotional distress.

■■■ In all of the aforementioned cases, the SJC held that the conduct could be reasonably found to "go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Restatement (Sec-

ond) of Torts § 46. By contrast, Posey recites four instances of Gouin's conduct which he characterizes in the totality as extreme and outrageous and beyond all possible bounds of decency and utterly intolerable in a civilized society. The actions include (1) Gouin's attempted entry into the condominium by drilling through the lock (# 58 ¶ 73); (2) Gouin's demand that Posey leave the premises within ten minutes (# 58 ¶ 73); (3) the waiving of a tape recorder in Posey's face by Gouin "in a menacing manner" (# 58 ¶ 73); and (4) the subsequent criminal application against Posey which was denied for probable cause. (# 59 ¶ 65)

Massachusetts law and the Restatement make clear that "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not constitute extreme and outrageous behavior. *Tetrault*, 425 Mass. at 466, 681 N.E.2d at 1197; Restatement (Second) of Torts § 46, com. d (1965). It is clear that none of Posey's allegations individually, or even in the totality, rise to the level of extreme and outrageous as a matter of law. Gouin's attempt to enter his own condo, given the fact, as Posey well knew, that the second temporary restraining order had not been served on him, cannot be characterized as anything more than an "annoyance" at best, or a single instance of criminal conduct at worst. As clarified by the Restatement, neither is sufficient by itself to rise to the level of extreme and outrageous. Gouin's demand that Posey be out of the condominium is similarly treated. The waiving of a tape recorder in Posey's face also seems to fall under the category of an annoyance or at worst tortious behavior. Finally, Gouin's application for a criminal complaint against Posey, although denied for lack of probable cause, is also insuffi-

cient to constitute behavior that "goes beyond all possible bounds decency...and utterly intolerable in a civilized community."

In sum, Posey has failed to allege any conduct by Gouin which could be characterized as extreme and outrageous as a matter of law. Consequently Gouin's motion to dismiss for failure to state a claim with respect to Count V of Posey's counterclaim is granted.

### 6. Count VI: Negligent Infliction of Emotional Distress

■ The earlier discussion of the elements of a negligent infliction of emotional distress claim under Massachusetts law is set forth under Part V.A.5. of this memorandum. In Count VI of his counterclaim, Posey asseverates that Gouin negligently inflicted emotional distress on him as a result of Gouin's actions at the condominium on January 5, 2001. All of the requisite elements of this tort have been pled [8] and thus the motion to dismiss Count VI of Posey's counterclaim shall be denied.

### C. The Counterclaims of Defendants Edward McMahon and William Toner

■ Defendants Toner and McMahon have individually filed counterclaims against Gouin for violation of chapter 272, section 99Q of the Massachusetts General Laws, Interception of Wire and Oral Communications. The statute provides a civil cause of action for

[a]ny aggrieved person whose oral or wire communications were intercepted, disclosed or used except as permitted or authorized by this section or whose personal or property interests or privacy were violated by means of an intercep-

---

**8.** A claim of negligent infliction of emotional distress does not require an allegation that  ·  the actor's conduct was "extreme and outrageous".

tion except as permitted or authorized by this section. . . .

Mass. Gen. L. c. 272, § 99Q (2002).

Aggrieved parties may recover actual and punitive damages as well as reasonable attorney's fees and other litigation costs.

An interception, as defined by the statute, "need not rise to the level of criminal conduct covered by the penal provisions of the law." *Pine v. Rust,* 404 Mass. 411, 414, 535 N.E.2d 1247, 1249 (1989). Moreover, the SJC has rejected the argument that police officers in performance of their public duties cannot be considered "aggrieved parties" for purposes of the statute, and therefore may recover against any party who violates the statute. *Commonwealth v. Hyde,* 434 Mass. 594, 600, 750 N.E.2d 963, 967 (2001).

Further, despite Gouin's argument to the contrary, use of the statute is not limited to controlling organized crime. The preamble of section 99A states that "the uncontrolled development and unrestricted use of modern electronic surveillance devices pose grave dangers to the privacy of all citizens of the commonwealth. Therefore, the secret use of such devices by private individuals must be prohibited." Mass. Gen. L. c. 272, § 99A (2002) (emphasis added). See also *Hyde,* 434 Mass. at 598, 750 N.E.2d at 966.

Both defendants Toner and McMahon allege that "[d]uring his arrest, transport and booking" on January 5, 2001, Gouin secretly tape recorded the entire incident until the officers discovered Gouin's handheld tape recorder. (# 50 ¶ 13, # 51 ¶ 13) Neither Toner nor McMahon consented to this tape recording. (# 50 ¶ 14, # 51 ¶ 14) Whether the officers' failure to notice the tape recorder as events unfolded amounted to implied consent is a not matter appropriate for disposition at this stage of the proceedings.

The defendants have alleged the necessary elements to show a violation of chapter 272 section 99Q of the Massachusetts General Laws. Gouin's Rule 12(b)(6) motion with respect to both Toner's and McMahon's counterclaims is without merit.

## VI. Conclusion And Orders

For the reasons stated it is ORDERED that Francois Gouin's motion to dismiss (# 68) with respect to the counterclaim of Dori C. Gouin be, and the same hereby is, ALLOWED as to Count VI to the extent a claim for intentional interference with contractual relations is alleged, and otherwise DENIED. It is FURTHER ORDERED that Francois Gouin's motion to dismiss (# 68) with respect to the counterclaim of Todd D. Posey be, and the same hereby is, ALLOWED as to Count V and otherwise DENIED. It is FURTHER ORDERED that Francois Gouin's motion to dismiss (# 64) with respect to the counterclaims of William R. Toner and Edward McMahon be, and the same hereby is, DENIED.