Neel, Stephen E., J.
This motion arises from an action by the trustees (Trustees) of the Ayer Family Trusts (Trusts) and Tenens Corporation (Tenens), which provides management services to the Trusts, against Thomas Hallowell, who was employed by Te-nens and advised the Trustees regarding investments. The plaintiffs contend that Hallowell both failed to uncover, and to some extent participated in, massive financial wrongdoing and fraud on the part of Tenens’s chief operating officer, John Doorly.[2] The matter is before the Court on the plaintiffs’ motion to dismiss Hallowell’s counterclaims. For the reasons stated below, the plaintiffs’ motion will be allowed in part and denied in part.
BACKGROUND
Tenens provides management services for more than 300 revocable and irrevocable trusts holding hundreds of millions of dollars for the beneficiaries, descendants of Frederick Ayer, Sr. Freya Fanning & Co., as nominee, holds all the Trusts’ cash, securities and other investments, and collects dividends therefrom. As COO of Tenens, Doorly was signatory to the Tenens and Trust bank accounts as well as manager of the Freya Fanning Money Market Fund, created to provide “bridge loans” to family members and private mortgages to creditworthy entities in which family members held an equity or other interest. By means of several interlocking schemes and during a period of at least ten years, Doorly allegedly siphoned off for his own personal use more than $57,000,000 from the Trusts. The plaintiffs discovered Doorly’s fraud in early March 2006, and terminated his employment.
Plaintiffs allege (and Hallowell denies) that Hallowell served as “the Ayer family’s Chief Investment Officer." Complaint, at 2. They contend that Hallowell actively managed and reviewed the Ayer family’s investments (totaling hundreds of millions), and reported monthly his recommendations. Unbeknownst to plaintiffs, they allege, Hallowell and Doorly “secretly were purchasing speculative stocks and utilizing bogus trust accounts,” all unauthorized, which cost the trusts more than $20,000,000. Id. They claim against Hallowell for conversion (Count I), breach of fiduciary duty (Count II), and fraud (Count III).
In response, Hallowell asserts against the plaintiffs (Tenens and the Trustees), and against three individual “parties” (Caleb Loring, a Trustee, chief executive officer, and an owner and director, of Tenens, and a partner of Freya Fanning; David Ayer, a Trustee, an owner and director of Tenens, and a partner of Freya Fanning; and James Totten, a Trustee, and a director of Tenens), a multi-count “Counterclaim” for conversion (Count I); abuse of process (Count II); violation of G.L.c. 93A (Count VI); and equitable indemnity (Count VII). In addition, he asserts against the Trustees[3] claims of interference with business relations (Count III), negligence (Count IV), and negligent misrepresentation (Count V), and seeks indemniiy from Tenens pursuant to G.L.c. 156D (Count VIII).
Hallowell contends generally that it was the counterclaim defendants’ failure to oversee the management of their assets by Doorly, not Hallowell’s conduct, that “enabled” Doorly’s theft. Counterclaim, para. 2. He seeks money damages for various kinds of harm he alleges resulted from the counterclaim defendants’ actions.
The counterclaim defendants move to dismiss on the grounds that (1) Hallowell signed a release discharging most of his claims against them; and (2) Hallowell has otherwise articulated no viable claims.
DISCUSSION
In order to withstand a motion to dismiss, a (counterclaim) plaintiffs complaint must contain “allegations plausibly suggesting (not merely consistent with) an entitlement to relief, in order to reflect [a] threshold requirement . . . that the plain statement possess enough heft to sho[w] that the pleader is entitled to relief.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1966 (2007) (internal quotations omitted). While a complaint need not set forth detailed factual allegations, a plaintiff is required to present more than labels and conclusions, and must raise a right to relief “above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact).” Id. See also Harvard Crimson, Inc. v. President & Fellows of Harvard Coll., 445 Mass. 745, 749 (2006); Schaer v. Brandeis Univ., 432 Mass. 474, 477-78 (plaintiff cannot “rest on ‘subjective characterizations’ or conclusoiy descriptions of *411 a ‘general scenario which could be dominated by unpleaded facts’ ”).
A.The Release
The counterclaim defendants argue that Hallowell released most of the counterclaims when he signed a “Separation and Consulting Agreement” (Agreement) that included a written release “of any and all claims . . . which he has had, now has, or may have in the future against [Tenens], whether or not either known to him now or discovered by him hereafter ...” Agreement, para. 6. Hallowell counters that, in the context of a Rule 12 Motion, “[o]nly the Counterclaim is properly before the Court at this stage; contested issues concerning the enforceability and applicability of the release are not.” Opposition, at 12. The Court agrees that the release issue is a matter for summary judgment, and will consider the adequacy of the counterclaims as pled.
B.Counterclaims Against the Individually Named Parties
As plaintiffs note, the counterclaims fail as to the individually named parties — Loring, Ayer, and Tot-ten — because they and the other Trustees, in their individual capacities, are not parties to this action. Rather, those three and the remaining Trustees have sued Hallowell as representatives and on behalf of the Trusts, and therefore are not “opposing part[ies]” against whom counterclaims may be stated. Mass.R.Civ.P. 13(a), (b). Hallowell must instead proceed against the individuals, as appropriate, under Mass.R.Civ.P. 14, or Rule 13(h).
C.Claims Against the Party Plaintiffs
The Court will consider the sufficiency of each of the eight counterclaims as against the plaintiffs, i.e., Tenens and the Trustees.
Count I: Conversion
Plaintiffs state no additional grounds for dismissing Count I besides the purported release, addressed above. Accordingly, the motion will be denied as to Count I.
Count II: Abuse of Process
Both sides agree that, to state a claim for abuse of process, Hallowell must allege that (1) the plaintiffs used process, (2) for an ulterior or illegitimate purpose, (3) resulting in damage. Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass 760, 775-76 (1986).
Plaintiffs correctly rely on Beecy v. Pucciarelli, 387 Mass. 589, 595-96 (1982), for the proposition that merely filing an action is insufficient to establish an abuse of process claim without proof of any ulterior purpose, but then seek to define the proscribed purpose more narrowly than have Massachusetts appellate decisions: “Hallowell’s allegations focus solely on Plaintiffs [sic] ‘motive’ in filing this action, and are completely devoid of facts alleging that Plaintiffs have taken any further action to coerce or extort an advantage either within or outside of the proceedings.” Plaintiffs’ Memorandum at 19 (emphasis in original).
That plaintiffs’ definition of “proscribed purpose” is unduly narrow is demonstrated by Beecy itself, in which the court notes that “each of the cases relied on by the Beecys involved an alleged or proven use of process for an ulterior purpose by the party using the process,” citing, e.g., "Quaranto v. Silverman, 345 Mass. 423 (1963) (attachment to obtain security for a debt); Lorusso v. Bloom, 321 Mass. 9 (1947) (supplemental process used to collect twice on debt already paid); Reardon v. Sadd, 262 Mass. 345 (1928) (attachment to avoid paying amount due for services performed in connection with attached property).” In each of those cases, the filing of the action, with the specified ulterior or illegitimate purpose, itself established the first two elements of abuse of process. Beecy, at 596, n.11.
So too in this case, where Hallowell has alleged that plaintiffs “wrongfully used this process to blame Hallowell for their own negligence, nonfeasance, dereliction and culpability in failing to recognize and put a stop to Doorly’s misappropriation of funds.” Counterclaim, para. 56. That allegation, and the allegations upon which it is based, support the plausible inference that plaintiffs used process to deflect blame, and ultimately liability, for the losses which the beneficiaries of the Trusts suffered at the hands of Doorly. Accordingly, the motion will be denied as to Count II.
Count III: Interference with Business Relations
The Trustees base their motion to dismiss Count III on the proposition that the “business relations” with which they allegedly interfered — i.e., Hallowell’s “valid expectation that his employment [with Tenens] would continue,” Counterclaim, para. 60 — is not a legally cognizable expectation where Hallowell was an employee at will. Plaintiffs’ Memorandum, at 14. Hallowell replies that wrongful procurement of termination, even of an at-will employee, may satisfy the “improper motive or means” element of the interference claim, citing, inter alia, Harrison v. NetCentric Corp., 433 Mass. 465, 477 (2001). The Court agrees, and so will deny the motion as to Count III.
Count IV: Negligence
Plaintiffs contend that Hallowell’s negligence claim must fail because they owed him no duty. Hallowell argues that, through the Freya Fanning account they established, and the “inappropriate level of discretion over and access to the Freya Fanning funds” which they gave Doorly, the Trustees “unreasonably exposed him (and others who held funds in Freya Fanning) to a risk of harm," violating a general duty to refrain from doing so. While the facts on a summary judgment record may compel a different conclusion as to duty, the facts alleged in the counterclaim are sufficient to defeat plaintiffs’ motion to dismiss.
*412 Count V: Negligent Misrepresentation
Plaintiffs challenge Count v. on the same basis upon which they challenge Hallowell’s claim for intentional interference with business relations, see above, with the same result.
Count VI: Violation of G.L.c. 93A
Ordinarily, for the reasons stated at page 17 of plaintiffs’ Memorandum, an employee cannot state a c. 93A claim against his employer. Here, however, the Court is persuaded by Hallowell’s arguments that the allegations in his counterclaim place this case within the exception to that rule, at least for purposes of a motion to dismiss. See Hallowell’s Opposition, at 19-20.
Plaintiffs further argue that trustees, executing their fiduciary responsibilities, are not acting in trade or commerce within the requirement of c. 93A, citing Steele v. Kelley, 46 Mass.App.Ct. 712, 726 (1999). In Steele, “[t]he entirety of Steele’s allegations constituted disputes between a beneficiary and the trustee over the administration of a trust.” Id.
To the extent that Count VI relies upon Tenens’s alleged interference with Hallowell’s business relations, or the Trustees’ alleged misappropriation of funds from Hallowell’s Freya Fanning accounts over which they had fiduciary duties to Hallowell, the motion to dismiss will be allowed. As to the remaining grounds stated by Hallowell under c. 93A, the motion will be denied.
Count VII: Equitable Indemnity
For the reasons stated in plaintiffs’ Memorandum, at 20, the motion will be allowed as to Count VII. Hallowell’s allegations in Count VII are more in the nature of affirmative defenses than affirmative claims.
.Count VIII: Indemnity Pursuant to G.L c. 156D
Count VIII seeks indemnity from Tenens under c. 156D, Sec. 8.52, for Hallowell’s expenses and counsel fees incurred in this action in the event that he prevails. Tenens contends that, where he has not alleged, and cannot allege, that he was an officer or director of Tenens, Hallowell is ineligible for statutory indemnity because he cannot satisfy that statutory requirement. Hallowell responds that, because Tenens alleges that he was an officer of Tenens, see Complaint, paras. 3,89, he is entitled to claim the statutory protection.
The Court will deny the motion without prejudice as to Count VIII.
ORDER
For the reasons stated above, the plaintiffs’ motion to dismiss defendant Hallowell’s counterclaims is ALLOWED as to all counts asserted against putative counterclaim defendants Loring, Ayer, and Hansen, in their individual capacities; is ALLOWED to the extent that Count VI relies upon Tenens’s alleged interference with Hallowell’s business relations, or the Trustees’ alleged misappropriation of funds from Hallowell’s Freya Fanning accounts over which they had fiduciary duties to Hallowell; is ALLOWED as to Count VII; and is otherwise DENIED.

 Doorly’s conduct is the subject of a separate action, Tenens Corp. v. Doorly, Suffolk Civ. No. 06-1134-BLS1.

 Counts III, IV, and v. each state that “Loring, Ayer, Totten, and the other Trustees” committed the acts which comprise the respective torts stated in those counts. The Court interprets the quoted language to mean that those counts are brought against the Trustees in their representative, not individual, capacities. The same interpretation applies to the allegations in Count IV, para. 65, regarding Loring “[a]s Chief Executive Officer of Tenens.”